Harry K. MYERS, Appellant,

v.

Emory WALKER—(IRA) Merrill Lynch, Appellee.

No. 11–99–00309–CV.

Court of Appeals of Texas, Eastland.

Nov. 8, 2001.

Rehearing Overruled Dec. 13, 2001.

724

Timothy A. Duffy, Burleson, Pate & Gibson, Dallas, for appellant.

Scott Scher, Brown, McCarroll & Oaks Hartline, L.L.P., Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

ARNOT, Chief Justice.

This appeal involves a claim for fraud arising from Harry K. Myers' breach of a settlement agreement. After a bench trial, the trial court entered judgment against Myers for actual damages of

$510,000 and exemplary damages of $660,000. We affirm.

### Background Facts

Emory Walker, a pharmacist, had a qualified individual retirement account with Merrill Lynch. At the solicitation of Myers, Walker took $200,000, which was approximately two-thirds of his total savings, from his IRA and invested in Insured Medical Claims, Ltd. (IMC). With this investment, "Emory Walker—(IRA) Merrill Lynch"[1] became a limited partner of IMC. According to the partnership agreement, IMC was in the business of buying insured, medical accounts receivables at a discount and then collecting them. The medical receivables were to be purchased in units of no more than $5,000. Myers controlled IMC and ran the business. Rather than purchasing insured receivables, Myers diverted most of the money invested by IMC's limited partners to various entities in which Myers also had an interest and which were indebted to one of IMC's general partners, United Mercantile Capital Corporation (UMCC). UMCC, which was also controlled by Myers, was licensed by the Small Business Administration (SBA) as a small business investment company. Because of UMCC's regulatory violations, the SBA called its loans. The diverted monies were ostensibly used to pay the debts owed to UMCC by the various other entities. Before investing in IMC, Walker had rejected Myers' request to borrow money in order to repay a loan to UMCC.

After discovering that IMC was not purchasing receivables, Walker sought the return of his investment from IMC in accordance with the partnership agreement. When IMC did not comply, Walker sued Myers and IMC for breach of contract, breach of fiduciary duties, and fraud (the 1995 lawsuit). Walker also filed a proof of claim in receivership proceedings that had been initiated by the United States Small Business Administration against UMCC.

During court-ordered mediation of the 1995 lawsuit, Myers insisted that Walker withdraw the proof of claim. Myers and Walker entered into a settlement agreement whereby Myers would pay a total of $110,000 in cash and would transfer stock worth $10,000. The cash was to be paid in two initial installments of $25,000 each and two subsequent installments of $30,000 each. The debt was to be secured by 300,000 shares of stock owned by Myers. Pursuant to the settlement agreement, Walker dismissed the 1995 lawsuit. Myers subsequently made both $25,000 payments, and Walker withdrew the proof of claim. Myers then breached the agreement by failing to deliver the stock for security, by failing to transfer the $10,000 worth of stock, and by failing to make either of the $30,000 installments. Walker attempted to modify or re-file his proof of claim but was precluded from doing so because of the expiration of statutory time limits. Walker sued Myers, asserting claims for breach of the settlement agreement and for fraud. The trial court entered judgment and awarded damages on the fraud claim only. Myers appeals from that judgment.

### Issues for Review

Myers presents 21 issues for appellate review. In Issues Nos. 1 and 2, Myers

---

**1.** Although "Emory Walker—(IRA) Merrill Lynch" was the named limited partner and the named plaintiff in the lawsuits, we will use the term Walker to refer to the plaintiff/appellee because Walker's IRA account at Merrill Lynch is not a legal entity and because Myers did not complain at trial about the plaintiff's name or capacity. See TEX. R.CIV.P. 28 & 93.

contends that the original petition does not support a claim for fraud and that the trial court erred by allowing Walker to file an amended petition. In Issues Nos. 4, 5, and 6, Myers argues that the evidence is legally and factually insufficient to show that Myers had no intent to perform under the settlement agreement, that Myers' representations were material, and that Walker relied on Myers' representations. In Issues Nos. 3, 8, 9, 10, 11, 12, and 13, Myers challenges the trial court's award of actual damages. In Issues Nos. 7, 14, 15, 16, 17, 18, and 19, Myers challenges the trial court's award of exemplary damages. In Issues Nos. 20 and 21, Myers complains that the trial court violated the statutory provisions of TEX. CIV. PRAC. & REM. CODE ANN. § 41.008 (Vernon 1997) in its award of damages.

### Walker's Pleadings on Fraud

In the first issue, Myers argues that the trial court erred by permitting Walker to amend the petition after the trial court had heard the evidence in this case but before it signed the judgment. In the second issue, Myers contends that the judgment for fraud is erroneous because the fraud allegations in the original petition failed to allege Myers' intent not to perform. We disagree.

 A trial court shall permit a party to amend its pleadings before judgment is entered unless (1) the opposing party presents evidence of surprise or prejudice or (2) the amendment asserts a new cause of action or defense and is, thus, prejudicial on its face. *Greenhalgh v. Service Lloyds Insurance Company*, 787 S.W.2d 938, 939 (Tex.1990); see TEX.R.CIV.P. 63 & 66. In a case where the trial amendment is not mandatory, the decision to permit or deny the amendment rests within the sound discretion of the trial court and may be reversed only upon the showing of a clear

abuse of discretion. *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.), cert. den'd, 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994).

Walker's original and amended petitions specifically alleged "Fraud" as the "SECOND CAUSE OF ACTION." The petitions stated:

18. At or about the time that Defendant Myers entered into the Settlement Agreement, he *represented,* assured, *and promised* Plaintiff, *both through the promises and covenants contained in the Settlement Agreement and otherwise,* that Defendant Myers would comply with and perform each of the terms of the agreement and that Plaintiff would not be required to institute any action or undertake any proceedings to enforce the terms thereof. While Plaintiff was understandably reluctant to enter into a settlement that required payments over time, yet required him to release the Prior Litigation and the UMCC Proof of Claim, Defendant Myers represented to Plaintiff that the releases were essential to assist UMCC and Defendant and to ensure that adequate resources would be available to perform under the Settlement Agreement.

19. The foregoing representations, *including but not limited to the promises contained in the Settlement Agreement,* were material, were made by Defendant with the intention that Plaintiff rely thereon and were relied upon by Plaintiff in entering into the Settlement Agreement.

20. Notwithstanding the foregoing, the above-referenced representations were false when made, *were never intended by Defendant to be performed* and Plaintiff (sic) [Defendant] knew, or reasonably should have known, of the falsity thereof. Defendant made each of

the misrepresentations to wrongfully induce Plaintiff to execute the Settlement Agreement and to release the claims asserted in the Prior Litigation and the UMCC Proof of Claim. (Emphasis added)

The underlined language was not included in the original petition but was contained in the amended petition.

■ We hold that the trial court did not abuse its discretion by allowing Walker leave to file the amended petition. The amended petition did not assert a new cause of action. Walker's original petition clearly stated that his second cause of action was for fraud and that the fraud was committed when Myers fraudulently induced Walker to enter into the settlement agreement by making material misrepresentations. Myers opposed the amendment and attempted to show that he would be prejudiced. The trial court rejected Myers' opposition. Because the amended petition did not materially alter Walker's claims, we hold that the trial court did not abuse its discretion in allowing the amendment. Consequently, the first and second issues for review are overruled.

### Evidence of Fraud

■ In the fourth, fifth, and sixth issues, Myers argues that there is no evidence and that the evidence is insufficient to support the following findings: at the time he entered into the settlement agreement, Myers did not intend to perform his obligations thereunder; Walker relied upon Myers' representations; and the representations were material. In addressing a no-evidence point, we must view the evidence in the record in a light which tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. If there is any evidence of probative force to support the finding, the no-evidence point must be overruled. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex. 1951); see also *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. den'd*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). In order to determine if the evidence is factually sufficient, we must review all of the evidence and determine whether the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex. 1986); *In re King's Estate, supra.*

■ In general, fraud consists of the following elements: a material misrepresentation that was false, that was either known to be false when made or was asserted without knowledge of its truth, that was intended to be acted upon, that was relied upon, and that caused injury. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998); *Sears, Roebuck & Company v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994); *DeSantis v. Wackenhut Corporation*, 793 S.W.2d 670, 688 (Tex. 1990), *cert. den'd*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc., supra* at 48. Although a party's intent is determined at the time the party made the representation, it may be inferred from the party's actions after the representation is made. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). The intent to defraud generally must be proven by circumstantial evidence. *Spoljaric v. Percival Tours, Inc., supra* at 435. Although

the mere failure to perform a contract is not evidence of fraud, even slight circumstantial evidence of fraud is sufficient to support a finding of fraudulent intent when considered with the breach of a promise to perform. *Spoljaric v. Percival Tours, Inc., supra*; see also *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc., supra*.

 In this case, Walker presented evidence that Myers was an attorney and that he had intentionally and deceitfully avoided service of process in the 1995 lawsuit. Walker also showed that Myers had insisted that he withdraw the UMCC proof of claim as a requirement to settle the 1995 lawsuit. Walker testified that the UMCC release was important to Myers and that Myers wanted it done immediately. Walker's proof of claim was the only one that had been filed in the UMCC receivership. Walker also testified that, after reaching an agreement during mediation whereby he would withdraw the proof of claim after Myers made the second payment, Myers attempted to change the terms of the agreement. He sent Walker a written settlement agreement that required Walker to withdraw the proof of claim before Myers made any payments. After Walker rejected the new terms, a compromise settlement agreement was signed that reflected the mediated terms. Shortly after delivery of the final draft, Myers again requested that Walker execute a withdrawal of the proof of claim. Myers failed to deliver the $10,000 worth of stock that was due about 5 months after the final agreement was signed. Myers also failed to tender the 300,000 shares of stock to secure his debt. The settlement agreement stated that these shares were owned by Myers and that Myers was to deliver them to Walker within 60 days of the settlement agreement. Myers never delivered the stock certificates, and he

subsequently failed to make either of the $30,000 installments. Walker testified that he relied upon Myers' representations. Walker also testified that the conditions of the settlement agreement with Myers were important to his decision to dismiss the 1995 lawsuit and to withdraw the proof of claim.

We hold that the evidence is both legally and factually sufficient to support the challenged findings on the issues of intent, reliance, and materiality. Issues Nos. 4, 5, and 6 are overruled.

### Actual Damages

In Issues Nos. 3, 10, 11, 12, and 13, Myers contends that Walker was not entitled to damages for mental anguish or emotional distress and that Walker should have been limited to loss-of-benefit damages of $70,000 because he did not request consequential or special damages in his pleadings, because no pleading supported the award of mental anguish damages, because mental anguish damages are not permissible in a tort suit related to the breach of a contract, because the evidence is legally and factually insufficient to support the award of $360,000 in damages for mental anguish, and because the named plaintiff is a non-person who cannot suffer mental anguish. In Issues Nos. 8 and 9, Walker contends that the evidence is legally and factually insufficient to support the award of $510,000 in actual damages.

 Walker pleaded that he had been damaged as a result of Myers' fraud and that the amount of damages was within the jurisdictional limits of the trial court. Myers correctly asserts that Walker's pleadings did not contain a claim for mental anguish or for special damages. See TEX.R.CIV.P. 56 (claims for special damages must be stated in pleadings). The record shows, however, that the trial court did not expressly include a recovery

for mental anguish. The trial court awarded actual damages in the lump sum of $510,000 in the judgment and stated in a finding of fact that Walker had "suffered direct and economic damages of at least $510,000." Mental anguish was not mentioned in the judgment or the findings of fact. Further, actual damages for fraud, including either the benefit-of-the-bargain measure or the out-of-pocket measure, need not be explicitly pleaded because they are direct, general damages from the fraud, rather than special damages. *Green v. Allied Interests, Inc.*, 963 S.W.2d 205, 208 (Tex.App.—Austin 1998, pet'n den'd). Although Walker's pleadings were inartful, we find that they were sufficient to support the trial court's findings in this case.

■ The record does show, however, that the trial court allowed Walker to testify over objection about his mental anguish. Walker testified that he had suffered mental anguish because of Myers' actions and that he was requesting $360,000 in damages for his mental anguish, emotional distress, and pain and suffering. Walker testified that he was financially unable to retire because of Myers' fraudulent acts. Walker, who was almost 73 years old at the time of trial, testified that his hearing was impaired which made it difficult to hear prescriptions over the phone, that he had to stand on his feet hours a day, and that the situation had caused hardships in his life and in his relationship with his wife (who was "violently opposed" to the investment Walker made in IMC). Walker also requested $150,000 ($200,000 initial invest-

ment less the $50,000 received from Myers) in damages for his actual economic loss. The trial court awarded damages in the amount requested by Walker in his testimony, but the court awarded actual damages in one lump sum and did not expressly award any damages for mental anguish or emotional distress.

■ Neither the trial court's judgment nor the findings of fact reflect that any of the damages were awarded to Walker for mental anguish; therefore, the issues related to the award of mental anguish damages are overruled. Furthermore, we note that tort damages may be recovered in a cause of action for fraudulent inducement even though the fraud is related to the breach of a contract. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.*, supra at 46–47. We also note that Myers did not preserve a complaint regarding the capacity of the named plaintiff, a non-person IRA account that was itself not a legal entity but clearly referred to Walker. See TEX.R.CIV.P. 28 & 93. We overrule Issues Nos. 3, 10, 11, 12, and 13.

■ In order to address Myers' legal and factual sufficiency challenges in Issues Nos. 8 and 9, we will apply the well-recognized standards of review stated previously in this opinion.[2] Texas recognizes two measures of direct damages for fraud: the benefit-of-the-bargain measure and the out-of-pocket measure. Benefit-of-the-bargain damages allow recovery for the difference between the value as represented and the value received. Out-of-pocket

---

2. For a no-evidence point, we must view the evidence in the record in a light which tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. If there is any evidence of probative force to support the finding, the no-evidence point must be overruled. *Weirich v. Weirich*, supra; *In re King's Estate*, supra; see also *Merrell Dow Pharmaceuticals, Inc. v. Havner*, supra. For a factual sufficiency challenge, we must review all of the evidence and determine whether the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Company*, supra; *In re King's Estate*, supra.

damages allow recovery for the actual injury suffered, which is measured by the difference between the value of that which the injured party has parted with and the value actually received. *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 681 (Tex.2000); *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc., supra* at 49.

 In this case, the out-of-pocket damages actually suffered by Walker include the value of what he parted with in consideration for the settlement agreement. See *Samedan Oil Corporation v. Intrastate Gas Gathering, Inc.*, No. 12–99–00242–CV, 2001 WL 1153443 (Tex.App.—Tyler Sept. 28, 2001, no pet'n h.). Walker parted with his causes of action in the 1995 lawsuit and the UMCC proof of claim. In addition to his testimony regarding mental anguish damages of $360,000 and the loss of $150,000 from his IRA account, Walker also testified regarding the damages that he had requested in his 1995 lawsuit and in the UMCC proof of claim. In the 1995 lawsuit, Walker sought actual damages "in excess of $800,000" for breach of fiduciary duties and exemplary damages of at least $600,000. In that lawsuit, Walker also sought actual damages of "at least $200,000" for breach of contract and for fraud. In the proof of claim, Walker sought $200,000 in actual damages and $600,000 in exemplary damages. As proof of the value of the 1995 lawsuit and the proof of claim, Walker offered testimony and documentary evidence tending to prove the claims he made in those suits. Walker further testified that he had lost investment returns of at least $10,000 per year. Walker actually received $50,000 from Myers pursuant to the settlement agreement. We hold that the evidence is both legally and factually sufficient to show that Walker's out-of-pocket damages

were at least $510,000. Issues Nos. 8 and 9 are overruled.

### *Punitive Damages*

 In Issues Nos. 7, 14, and 19, Myers contends that the award of exemplary damages is inappropriate because Walker did not prove a distinct tortious injury, because the award for actual damages is inappropriate, and because Walker failed to show actual malice. Exemplary damages may be awarded if the claimant proves by clear and convincing evidence that the harm for which he seeks recovery of exemplary damages resulted from fraud *or* malice. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1) (Vernon 1997). Walker pleaded and proved that Myers fraudulently induced him to enter into the settlement agreement. This type of claim supports the award of tort damages, including exemplary damages, regardless of whether the injury is distinct from any permissible contractual damages. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc., supra* at 46–47. Furthermore, we have upheld the award of actual damages in this case. Thus, we overrule Issues Nos. 7, 14, and 19.

 In Issues Nos. 15, 16, 17, and 18, Myers challenges the legal and factual sufficiency of the evidence in support of the exemplary damages and asserts that the exemplary-damage award is not reasonably proportional to the actual-damage award. We disagree. The trier of fact has discretion in determining whether to award exemplary damages. TEX. CIV. PRAC. & REM. CODE ANN. § 41.010 (Vernon 1997). We must review the award of exemplary damages with careful scrutiny to ensure that the award is supported by the evidence, and we may vacate the award or suggest a remittitur only if the award is "so factually insufficient or so

against the great weight and preponderance of the evidence as to be manifestly unjust." *Transportation Insurance Company v. Moriel,* 879 S.W.2d 10, 30 (Tex. 1994). In order to determine if the exemplary damages awarded were reasonable, we consider factors such as the following: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981).

■■■ In this case, Walker brought forth evidence showing the nature of the wrong. Myers fraudulently induced Walker to enter into a settlement agreement. In doing so, Walker was precluded from litigating the causes of action asserted in the 1995 lawsuit and the UMCC proof of claim. Walker showed the culpable character of Myers' conduct and the continuing pattern of that conduct. Myers, an attorney, took advantage of Walker, leaving him financially unable to retire at the age of 73, and then fraudulently induced Walker to settle his claims against Myers. Myers ceased performing under the settlement agreement as soon as Walker dismissed the 1995 lawsuit and withdrew the UMCC proof of claim that was so important to Myers. We hold that this evidence is sufficient to support the award of exemplary damages in the amount of $660,000, that the award is not excessive, that it is reasonable, and that the trial court did not abuse its discretion by awarding exemplary damages in this case. Issues Nos. 15, 16, 17, and 18 are overruled.

### Section 41.008

In the final two issues, Myers complains that the trial court violated Section 41.008 by failing to separate economic damages from compensatory damages and by awarding punitive damages that exceeded the statutory cap. We disagree. Section 41.008 provides in relevant part:

(a) In an action in which a claimant seeks recovery of exemplary damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.

(b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:

(1)(A) two times the amount of economic damages; plus

(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or

(2) $200,000.

(c) Subsection (b) does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the following sections of the Penal Code if, except for Sections 49.07 and 49.08, the conduct was committed knowingly or intentionally:

(10) Section 32.45 (misapplication of fiduciary property or property of financial institution);

(11) Section 32.46 (securing execution of document by deception).

■■■ Myers' fraudulent conduct fell within the exceptions enumerated in Section 41.008(c). See *Konkel v. Otwell,* No. 11-00-00292-CV, 2001 WL 1298738 (Tex. App.—Eastland Oct. 25, 2001, no pet'n h.). Therefore, the statutory cap under Section 41.008(b) does not apply in this case. Because the cap does not apply, there was no error in failing to separate the economic damages from the other compensatory damages (if any) as required by Section

41.008(a). Issues Nos. 20 and 21 are over-ruled.

The judgment of the trial court is affirmed.