NUMBER 13-07-00707-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


SERVICE CORPORATION INTERNATIONAL 

AND SCI TEXAS FUNERAL SERVICES, INC., 

D/B/A MONT META MEMORIAL PARK, Appellants,


v.
 


JUANITA G. GUERRA, JULIE ANN RAMIREZ,

GRACIE LITTLE, AND MARY ESTHER MARTINEZ, Appellees.

 


On appeal from the 404th District Court 


of Cameron County, Texas.


 


 MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Benavides 


Memorandum Opinion by Justice Rodriguez



 Appellants Service Corporation International (SCI) and SCI Texas Funeral Services,
Inc., d/b/a Mont Meta Memorial Park (Mont Meta or SCI Texas) challenge the jury's verdict
in favor of appellees Juanita G. Guerra and her daughters, Julie Ann Ramirez, Gracie
Little, and Mary Esther Martinez (collectively, the Guerras). The jury found appellants liable
for trespass, negligence, and intentional infliction of emotion distress for disturbing the
grave of the Guerras' deceased husband and father and, subsequently, misrepresenting
the situation to the family; the jury awarded $2.3 million in mental anguish damages and
$4 million in exemplary damages. By seven issues, appellants complain that: (1) the
evidence of liability and actual damages is legally and factually insufficient; (2) the amount
of actual damages awarded is excessive; (3) the award of exemplary damages was tainted
by the admission of irrelevant and prejudicial evidence and the amount was excessive; (4)
the jury charge authorizing exemplary damages in excess of the cap was erroneous; (5)
the jury's verdict was influenced by improper jury argument; and (6) cumulative error should
result in a new trial. (1) We affirm, in part; modify the judgment, in part; and affirm the
judgment as modified.

I. BACKGROUND

 Marcos Guerra, husband and father of appellees, died in October 2001 after a brief
but sudden illness. On the Friday before their father's Monday funeral, the Guerra
daughters went to Mont Meta, a cemetery in San Benito, Texas, owned and operated by
SCI Texas, (2) to make arrangements for the burial. Appellees originally planned to use a
plot owned by another family member, which was to be quit-claimed to the Guerras. 
However, appellees decided after their first meeting at Mont Meta that they, instead,
wished to buy two adjacent plots so that Mrs. Guerra could be buried beside her husband. 
A Mont Meta sales employee consulted the cemetery's burial plot books and determined
that spaces 5 and 5x in the older section of the cemetery were available for the Guerras'
purchase. As part of the sales process mandated by SCI Texas policy, another Mont Meta
employee then performed a "blind check" of the plot records to ensure the spaces offered
to the Guerras were available for sale; (3) the employee who performed the blind check
confirmed the availability of the spaces. 

 In fact, space 5 was not available because it had been previously sold to another
family. The sales employee who performed the initial review of the records overlooked two
ditto marks in the book that indicated that space 5 was already owned by the Bricelda
Martinez family. The employee who performed the blind check noted the ditto marks and
approached her manager at Mont Meta, who assured the employee that everything was
in order and who then erroneously marked in the book that space 5 had been quit-claimed
to the Guerras by Bricelda Martinez. The employees involved with the sale of the burial
plot to the Guerras testified at trial that they had doubts regarding the status of the Guerra
file prior to the burial, but Mont Meta proceeded to bury Marcos Guerra on the following
Monday notwithstanding the employees' uncertainties. 

 A few days after the burial, Jaye Gaspard, general manager of Mont Meta,
discovered the mistake. He called the Guerras to inform them of the mistaken sale and
asked whether they would be amenable to moving their father's grave. The Guerras did
not agree to move the grave. Despite the family's refusal, the Mont Meta grounds crew
uncovered Mr. Guerra's coffin and moved it twelve to eighteen inches out of space 5 and
into space 5x. The record is unclear as to the exact date the coffin was moved. Gaspard
then sent a letter to the Guerras informing them that the situation had been resolved; the
letter did not state that Mr. Guerra's remains had been moved. 

 Several months after the burial, in early 2002, appellants visited the grave of their
father and noticed that the dirt above the grave had been disturbed. The Guerras
questioned Mont Meta about the freshly-dug earth, and Gaspard responded with a letter
stating that Mont Meta was resodding the cemetery in preparation for the holidays and
because of drought conditions. Doubting the veracity of the letter, the Guerras performed
their own probe of the grave site and discovered that the coffin had been moved. As a
result, in April 2002, the Guerras filed a complaint with the Texas Funeral Commission
accusing Mont Meta of moving Mr. Guerra's grave without their permission. Counsel for
SCI drafted a letter responding to the Guerra's complaint. Mont Meta's new general
manager signed the letter and sent it to the funeral commission. (4) The funeral commission
did not find any wrongdoing by Mont Meta. However, in November 2002, Mont Meta sent
a letter to the Guerras admitting it had moved Mr. Guerra's grave. The Guerras then
exhumed Mr. Guerra's remains; the Guerra daughters testified that the family made this
decision because they were uncertain that Mont Meta was being truthful about anything
it said regarding their father's grave.

 The Guerras filed suit against SCI and SCI Texas alleging causes of action for
negligence, fraud, trespass, and intentional infliction of emotional distress. The case was
tried before a jury, which returned a verdict in favor of the Guerras finding SCI seventy
percent liable and SCI Texas thirty percent liable for negligence, trespass, and intentional
infliction of emotional distress. The jury awarded $2.3 million in mental anguish
damages--$2 million to Mrs. Guerra and $100,000 to each daughter. As exemplary
damages, the jury awarded $3 million against SCI and $1 million against SCI Texas--
seventy percent to Mrs. Guerra and ten percent to each daughter. This appeal ensued.II. DISCUSSION

A. Sufficiency of the Evidence

 By three issues, (5) appellants contend that the evidence was legally and factually
insufficient to support the jury's verdict on liability and actual damages. 

 1. Standard of Review

 We may sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact. King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003). In determining whether there is legally sufficient evidence
to support the finding under review, we must consider evidence favorable to the finding if
a reasonable fact-finder could and disregard evidence contrary to the finding unless a
reasonable fact-finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex.
2005).

 Anything more than a scintilla of evidence is legally sufficient to support the finding.
Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). When the
evidence offered to prove a vital fact is so weak as to do no more than create a mere
surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal
effect, is no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). 
More than a scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital fact. Rocor
Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

 In reviewing an appellant's factual sufficiency challenge to an adverse jury finding
on which the other party had the burden of proof, we will consider, weigh, and examine all
of the evidence in the record, both in support of and contrary to the finding. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). We will set aside the jury's finding only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 In the context of a jury trial, the sufficiency of the evidence is reviewed in light of the
charge submitted if no objection is made to the charge. Romero v. KPH Consolidation,
Inc., 166 S.W.3d 212, 221 (Tex. 2005); Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711,
715 (Tex. 2001). However, when a party properly objects to a jury question, we review the
sufficiency of the evidence in light of the charge the trial court should have submitted. St.
Joseph Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2003).

 2. Trespass, Negligence, and Intentional Infliction of Emotional Distress

 In their third and fourth issues, appellants argue that the evidence was insufficient
to establish that appellants committed trespass, negligence, and intentional infliction of
emotional distress. (6)

 Neither party objected to the jury charge on trespass; we must, therefore, review the
evidence in light of the charge. See Romero, 166 S.W.3d at 221. Trespass was defined
in the charge, in relevant part, as follows:

 

 And furthermore, a "trespass" occurs when one intentionally commits an act,
or when one intentionally fails to act, when that act or failure to act violates
a property right, or would be practically certain to have that effect, although
the actor may not know that the act he intends to commit or that his failure
to act is such a violation.


 The family of a deceased person has a legally cognizable right to bury their
deceased and preserve his remains. Love v. Aetna Cas. & Sur. Co., 99 S.W.2d 646, 650
(Tex. Civ. App.-Beaumont 1936), aff'd on other grounds, 132 Tex. 280, 121 S.W.2d 986
(Tex. 1938). Texas courts have recognized this right as a property right, see, e.g., Burnett
v. Surratt, 67 S.W.2d 1041, 1042 (Tex. Civ. App.-Dallas 1934, writ ref'd), and have held
that disturbing the remains of the deceased family member constitutes a trespass claim
for which damages may be maintained. Terrill v. Harbin, 376 S.W.2d 945, 947 (Tex. Civ.
App.-Eastland 1964, writ dism'd).

 The jury was presented with evidence that Gaspard, general manager of Mont Meta,
moved the remains of Mr. Guerra without appellees' permission. The evidence showed
that Gaspard was employed by SCI Texas, the direct owner of Mont Meta. There was also
evidence that Gaspard was paid by SCI; Gaspard's paychecks contained the SCI logo and
did not clearly differentiate between SCI and SCI Texas. The jury also heard testimony
from Abel Martinez, supervisor of the grounds crew at Mont Meta, who stated generally that
he was employed by the "SCI company." Martinez confirmed that he and at least one
other member of the grounds crew disinterred Mr. Guerra's grave per instructions from
Gaspard.

 We conclude that there was more than a scintilla of evidence to establish that SCI
and SCI Texas committed trespass when its managerial employees intentionally disturbed
the remains of Mr. Guerra. See Cazarez, 937 S.W.2d at 450; Terrill, 376 S.W.2d at 947. 
Under the jury charge, the Guerras were not required to prove that appellants knew their
actions violated appellees' rights; rather, it is sufficient that the Guerras showed an
intentional act by appellants that violated their legal right to control the burial and remains
of Mr. Guerra. See Love, 99 S.W.2d at 650. The evidence was, therefore, legally
sufficient. Moreover, we conclude that the evidence was factually sufficient because the
jury's finding was not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust. See Cain, 709 S.W.2d at 176. Appellants' third and
fourth issues are overruled. 

 3. Mental Anguish Damages

 By their first issue, appellants complain that the evidence is insufficient to support
the Guerras' recovery of mental anguish damages. Specifically, appellants argue that
there was insufficient evidence of the nature, duration, and severity of the Guerras' harm.

 At trial, no party objected to the mental anguish jury charge, so we are guided by
the law as set out in the language of the charge. See Romero, 166 S.W.3d at 221. The
jury charge defined mental anguish as follows:

 "Mental anguish" means emotional pain, torment and suffering. It is more
than mere disappointment, anger, resentment or embarrassment, although
it may include all of these. It includes a mental sensation of pain resulting
from such painful emotions as grief, severe disappointment, indignation,
wounded pride, shame, despair and/or public humiliation. (7)


 Generally, "direct evidence of the nature, duration, and severity" of the plaintiff's
mental anguish "establishing a substantial disruption in the plaintiff's daily routine" is
necessary to survive an evidentiary challenge. Parkway Co. v. Woodruff, 901 S.W.2d 434,
444 (Tex. 1995); Krishnan v. Ramirez, 42 S.W.3d 205, 216 (Tex. App.-Corpus Christi
2001, pet. denied). The evidence may come from the plaintiff's own testimony or the
testimony of third parties, so long as adequate details are provided to the fact finder to
assess the degree of mental anguish. Parkway, 901 S.W.2d at 444. However, this direct
evidence is not necessarily required in all cases; certain types of particularly shocking or
disturbing "injuries have been found sufficient to support an inference that the injury was
accompanied by mental anguish." Id. at 444-45. Qualifying disturbing events usually
include threats to "physical safety or reputation" or the "death of, or serious injury to, a
family member." (8) Id. at 445. Texas courts have recognized one such disturbing event in
particular--the mishandling of a corpse. See id. at 443 (citing Pat H. Foley & Co. v. Wyatt,
442 S.W.2d 904, 907 (Tex. Civ. App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.)).

 Here, Mrs. Guerra testified that "[i]t's been devastating whenever I find out the grave
had been tampered [sic]. I have been through a lot of stress. I couldn't sleep at night . .
. . I suffer my stomach [sic], I have a lot of burning . . . just a lot of what I feel is burning,
headaches." Mrs. Guerra stated that she had been prescribed Paxil by her doctor for
anxiety and depression. She stated that she was afraid that there would not be room in
their plot to bury her next to her husband and worried that Mont Meta might move her
remains after she dies. Gracie Little, one of the Guerra daughters, also testified that her
mother had suffered physically, emotionally, and mentally; she confirmed that her mother
is constantly worried and is taking Paxil for her anxiety.

 With regard to their own mental anguish, the Guerra daughters testified as follows:

 Julie Ramirez: This has been the hardest thing that I have had to go
through with my family. I have lots of nights that I don't
sleep just thinking. . . . I always imagine that it was done
[sic], I never think it was my dad and how they had
moved him and what he must have felt. This was a
total disrespect for him. I had a conversation with my
dad several years ago outside my patio and I will tell
you about it because I want you to know. When he was
little, his family was very poor and they moved around
a lot. . . . He had no control over that. That was
something that happened and here after we bury him,
he is still moved out of his control [sic]. And that's been
very difficult. We had to go make a decision to
exhume, to find dad if he was there [sic] and that was
hard. We didn't want to go through that again.


 Esther Martinez: When my dad passed away, I was holding his hand. 
He passed away holding my hand and I knew that I had
to go on with my life because that's part of life. You
know, go on. But when we got down to SCI to my dad
[sic], it's not part of my life. I didn't have to accept that
and I did not accept it and I won't accept it.


 Gracie Little: It's the same thing as my mother and my sisters. We're
not at peace. We're always wondering. You know, we
were always wondering where our father was. It was
very hard to hear how this company stole our father
from his grave and moved him. That was hard. And I
pray none of you have to go through this. 

 We conclude that appellees presented direct evidence of Mrs. Guerra's mental
anguish. See Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 797-98 (Tex. 2006) (holding
that plaintiff's testimony that he was depressed, humiliated, unable to sleep, and suffered
from headaches and nightmares was sufficient); Bentley v. Bunton, 94 S.W.3d 561, 606-07
(Tex. 2002) (reasoning that the evidence of mental anguish was sufficient where the
plaintiff's family was disrupted and he lost sleep and was depressed). The evidence shows
Mrs. Guerra was suffering from insomnia and stomach pains. She was also on medication
for depression and anxiety. Her injuries were further confirmed by the testimony of her
daughter. See Parkway, 901 S.W.2d at 444 (holding that mental anguish can be
established by the testimony of third parties). And although the testimony of the Guerra
daughters did not show they suffered the same physical and severe emotional injuries as
their mother, we conclude that the nature of the wrong committed by appellants--the
mishandling of Mr. Guerra's remains--combined with the experiences described in the
testimony are sufficient to create an inference that the Guerra daughters suffered mental
anguish. See id.

 In sum, there was more than a mere scintilla of evidence that appellees suffered
mental anguish, and we conclude that the evidence was, therefore, legally sufficient. See
Cazarez, 937 S.W.2d at 450. Moreover, the jury's verdict regarding mental anguish
damages was not so contrary to the evidence as to render it clearly wrong or manifestly
unjust; thus the evidence was also factually sufficient. See Cain, 709 S.W.2d at 176. 
Appellants' first issue is overruled to the extent it challenges the sufficiency of the evidence
supporting recovery of mental anguish damages. 

B. Excessive Actual Damages

 By their first issue, appellants also argue that the amount of mental anguish
damages awarded was excessive. "An allegation that damages are excessive invokes the
same standard of review as any factual sufficiency challenge." Krishnan, 42 S.W.3d at
218. Again, the parties here did not object to the mental anguish jury charge, so the
damages awarded must be an amount that would fairly and reasonably compensate the
Guerras in light of the language of the charge, as was described previously. Id. (citing
Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996)). "The jury has
the discretion to award damages within the range of evidence presented at trial, so long
as a rational basis exists for the jury's calculation," and we will defer to the jury's
determination in such a situation. W.L. Lindemann Operating Co., Inc. v. Strange, 256
S.W.3d 766, 787 (Tex. App.-Fort Worth 2008, pet. denied). 

 Appellants offer virtually no explanation as to why the mental anguish damages in
this case were excessive, instead making the bare assertion that the jury "pick[ed] a
number and put it in the blank." (9) However, it is evident that the jury made a rational
determination regarding damages in this case. See id. First, as previously detailed, there
was ample evidence that the Guerras suffered great mental anguish as a result of
appellants' mishandling of Mr. Guerra's remains and subsequent misrepresentations such
that the jury acted fairly and reasonably in awarding them significant damages. See
Krishnan, 42 S.W.3d at 218. Second, the fact that the jury awarded the Guerra daughters
substantially less in damages than their mother suggests that the jurors engaged in a
thoughtful analysis of the testimony and other evidence. See Service Corp. Int'l v. Aragon,
268 S.W.3d 112, 121-22 (Tex. App.-Eastland 2008, pet. filed) (affirming the amount of
mental anguish damages awarded, in part, because the jury clearly differentiated between
the harm suffered by the various plaintiffs). We cannot say, therefore, that the amount of
damages awarded for mental anguish is so contrary to the overwhelming weight of the
evidence as to be manifestly unjust. See Krishnan, 42 S.W.3d at 218. Appellants' first
issue is overruled in so far as it challenges the alleged excessiveness of the mental
anguish damages.

C. Exemplary Damages

 In two issues, appellants challenge the exemplary damages awarded to the
Guerras. First, appellants contest the trial court's admission of certain evidence that
allegedly affected the exemplary damages findings. (10) Second, appellants allege charge
error, challenging question 11 in the jury charge, which lays the predicate to justify
damages in excess of the statutory cap. (11)

 1. Admission of Evidence

 By their fifth issue, appellants contend that the trial court erred in admitting evidence
regarding (1) alleged other bad acts by appellants dissimilar to the facts of this case, (2)
the good deeds the Guerras intend to perform with the damages award, and (3) the
general wealth of SCI, as opposed to its net worth. Evidentiary rulings are committed to
the sound discretion of the trial court. Owens-Corning Fiberglass Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it rules without regard
to any guiding rules or principles. Id. Trial courts may exclude otherwise relevant evidence
if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury. Tex. R. Evid. 403. We must uphold the
trial court's ruling if there is any legitimate basis for it. Malone, 972 S.W.2d at 43. 
Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the
error probably caused the rendition of an improper judgment; specifically, a trial court's
ruling on evidence is not usually reversible unless the appellant can demonstrate that the
whole case turned on the particular evidence admitted or excluded. Tex. R. App. P.
44.1(a); Interstate Northborough P'ship v. State, 66 S.W.3d 213, 220 (Tex. 2001).

 a. "Other Wrongs" Evidence

 Appellants complain that the trial court abused its discretion in admitting evidence
of "other wrongs" that allegedly occurred at other cemeteries owned by appellants,
including wrongful burials, double sales of plots, desecration of remains, and other alleged
bad acts related to burials and the treatment of graves. The Guerras' evidence included
testimony from persons whose families had filed lawsuits against appellants in connection
with incidents at various cemeteries in the Rio Grande Valley and other parts of Texas; the
Guerras also questioned appellants' managerial employees regarding a class action filed
in Florida alleging extensive wrongdoing at appellants' cemeteries in that state. The record
contains exhibits related to those lawsuits. Appellants argue these incidents were
dissimilar to the facts of this case and, because of the dissimilarity, were irrelevant and
inadmissible. Alternatively, appellants contend that even if the incidents were relevant, the
probative value of the evidence is substantially outweighed by the prejudicial, inflammatory
nature of the evidence.

 The general rule in Texas is that evidence of other acts by a party with persons not
parties to the lawsuit are irrelevant, immaterial, unfairly prejudicial, and therefore,
inadmissible. Sturges v. Wal-Mart Stores, Inc., 39 S.W.3d 608, 613 (Tex. App.-Beaumont 
1998), rev'd on other grounds, 52 S.W.3d 711 (Tex. 2001). However, when a party's intent
is material, other acts of that same party may be introduced if they are so connected with
the case at hand such that all of the acts may be considered as parts of a system, scheme,
or plan. Id. (citing Tex. Cookie Co. v. Hendricks & Peralta, Inc., 747 S.W.2d 873, 881 (Tex.
App.-Corpus Christi 1988, writ denied)). In particular, "'[o]ther acts' evidence is admissible
both to show willful intent in support of exemplary damages, and to show a plan or
scheme." Id. at 614 (citation omitted). For example, this exception has been used
specifically to admit evidence of prior lawsuits against a defendant who argues that its
conduct in the case at hand is an isolated incident. See id.

 Our review of the pretrial and trial records reveals that the court took great care in
considering the other lawsuits offered as evidence by the Guerras for similarity to the facts
of this case and permitted the admission of only those cases that involved the double sale
of a plot, burying a body in the wrong space, or moving a body without the family's
permission. Moreover, it is plain from the record and appellants' briefing to this Court that
they have, throughout this proceeding, attempted to portray the Guerras' case as an
isolated incident caused by the rogue actions of one employee, Gaspard. Therefore, we
conclude that the evidence of other bad acts committed by appellants falls within the
exception to the general rule that such evidence is inadmissible--it shows a pattern of
wrongful conduct, is relevant to the issue of exemplary damages, and the trial court did not
abuse its discretion in admitting the evidence. Appellants' fifth issue is overruled in so far
as it relates to the "other wrongs" evidence admitted by the trial court. See id. at 613-14;
Malone, 972 S.W.2d at 43. 

 b. Intended Use of the Damages

 Appellants also argue by their fifth issue that the trial court erred in admitting
testimony by the Guerras regarding their intended use for any damages awarded. (12) 
However, appellants cite no authority binding on this Court in support of this argument, and
we are not persuaded that this evidence is irrelevant or unduly prejudicial. See Tex. R.
Evid. 401 (stating that evidence is relevant that has "any tendency to make the existence
of any fact . . . more or less probable than it would be without the evidence.") (emphasis
added). The trial court did not abuse its discretion, and appellant's fifth issue is overruled
to the extent it challenges the admission of this evidence.

 c. General Wealth of SCI

 Finally, appellants complain by their fifth issue that the trial court erroneously
admitted evidence of SCI's assets and gross income; appellants challenge the admission
of SCI's annual reports and contend that, in argument, the Guerras referenced SCI's
wealth to create prejudice. Assuming without deciding that the trial court did err in
admitting this evidence, we nonetheless conclude that it did not cause the rendition of an
improper judgment. See Tex. R. App. 44.1. In addition to the evidence noted by
appellants, the Guerras also introduced evidence of SCI's net worth, between $1.5 billion
and $2 billion, which is clearly admissible, (13) and, in fact, our review of the record revealed
that it was this dollar amount that the Guerras emphasized in their argument to the jury. 
In light of this, we are not persuaded that the jury's verdict turned on the admission of
evidence of SCI's general wealth. See Interstate Northborough P'ship, 66 S.W.3d at 220. 
We conclude that the trial court did not abuse its discretion; appellants' fifth issue is
overruled in so far as it challenges the admission of SCI's assets and gross income. 

 2. Charge Error

 By their second issue, appellants allege charge error in jury question 11. Question
11 reads as follows: "Did either of the Defendants conceal or otherwise impair the verity
of a writing for which the law provides public recording or filing with intent to defraud or
harm another?" Appellants argue that question 11 does not accurately set out the law
because it does not inform the jury that the fraud allegedly committed by appellants in their
letter to the Texas Funeral Commission must have caused the Guerras' injuries. We
agree.

 We review a jury charge for error under an abuse of discretion standard. Krishnan,
42 S.W.3d at 220 (citing Tex. Dep't of Human Serv. v. E.B., 802 S.W.2d 647, 649 (Tex.
1990)). A trial court abuses its discretion in submitting certain language to the jury if it does
so arbitrarily or unreasonably or without reference to guiding rules and principles. Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). However, error in the
charge is reversible only if it harmed the appellant, i.e. probably caused the rendition of an
improper judgment. Tex. R. App. P. 44.1(a); Boatland, Inc. v. Bailey, 609 S.W.2d 743, 749-50 (Tex. 1980).

 In a case where, as here, there are no economic damages, exemplary damages are
generally capped at "an amount equal to any non-economic damages, not to exceed
$750,000." Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b)(1)(B) (Vernon 2008). The cap
"does not apply to a cause of action against a defendant from whom a plaintiff seeks
recovery of exemplary damages based on conduct described as a felony" under certain
sections of the penal code. Id. § 41.008(c). Appellees argue that, under the law, they
need not connect appellants' alleged felonious conduct to their injuries. However, the plain
language of the statute does not support this proposition. We conclude the statute clearly
mandates that the Guerras' injuries must have resulted from the fraud allegedly committed
by appellants in their response to the funeral commission. See id. (stating that the
statutory cap on exemplary damages "does not apply to a cause of action . . . seek[ing]
recovery of exemplary damages based on conduct described as a felony") (emphasis
added); see, e.g., Bennett v. Reynolds, 242 S.W.3d 866, (Tex. App.-Austin 2007, pet.
granted) (upholding exemplary damages award in excess of statutory cap where
defendant's felony theft gave rise to plaintiff's action for conversion); Mission Res., Inc. v.
Garza Energy Trust, 166 S.W.3d 301, 315-16 (Tex. App.-Corpus Christi 2005), rev'd on
other grounds, 268 S.W.3d 1 (Tex. 2008) (affirming exemplary damages award in excess
of cap where defendant's felony theft was the basis of plaintiff's claims for subsurface
trespass, breach of duty of good faith pooling, and breach of implied covenants to develop,
market, and protect against drainage); Myers v. Walker, 61 S.W.3d 722, 732 (Tex.
App.-Eastland 2001, pet. denied) (allowing exemplary damages in excess of cap where
defendant's fraud induced plaintiff into signing settlement agreement from which plaintiff's
cause of action for breach arose). 

 Question 11 is erroneous because it did not adequately inquire about the conduct
necessary to bust the cap on exemplary damages. While it is true that appellants would
have committed a qualifying felony if they intentionally impaired the verity of a publicly-recorded writing, see Tex. Penal Code Ann. § 32.47(a) (Vernon 2003), the Guerras' claims,
nonetheless, would have fallen within the statutory cap unless their damages were based
on that felonious conduct. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008(c). We,
therefore, conclude that the trial court acted without reference to guiding rules and
principles and abused its discretion in submitting question 11 to the jury without language
requiring the fact finders to find that the alleged fraud caused the Guerras' injuries. See
Downer, 701 S.W.2d at 242. Moreover, we conclude that the court's error in submitting
the instruction harmed appellants. See Tex. R. App. P. 44.1(a). Had the jury not answered
"yes" to question 11, the Guerras would have been unable to recover damages in excess
of the statutory cap; in other words, absent the erroneous charge, the Guerras' exemplary
damages would have been limited to $750,000 from each defendant. See Tex. Civ. Prac.
& Rem. Code Ann. § 41.008(b)(1)(B); see Wackenhut Corrections Corporation v. de la
Rosa, No. 13-06-00692-CV, 2009 WL 866791, at *48 (Tex. App.-Corpus Christi Apr. 2,
2009, no pet. h.) (citing Seminole Pipeline Co. v. Broad Leaf Partners, Inc., 979 S.W.2d
730, 752 (Tex. App.- Houston [14th Dist.] 1998, no pet.)) (applying cap on a per-defendant
basis). Appellants' second issue is sustained. (14)

E. Improper Jury Argument

 In their sixth issue, appellants contend that the jury's verdict was influenced by
improper jury argument. Specifically, appellants argue that the trial court erred in allowing
counsel for the Guerras to make an improper appeal to the jury to consider the case as if
they were standing in the Guerras' shoes. To reverse the trial court's judgment based on
improper jury argument, appellants must demonstrate that: (1) improper argument was
made; (2) improper argument was not invited or provoked; (3) error was preserved by the
proper trial predicate; (4) error was not curable; (5) argument, by its nature, degree, and
extent, constituted reversible harmful error; and (6) argument probably affected a material
finding in light of the entire record. Standard Fire Ins. Co. v. Reese, 584 S.W.2d 835, 839
(Tex. 1979).

 Appellants complain of the following excerpt from the Guerras' jury argument:

 So you're going to have to come to the decision how to answer [question] 8
[regarding exemplary damages]. Do you believe that our society should
accept this, or should we exercise the only thing that we can do as
individuals in our community and take the only thing that SCI values from
them, because if we don't, if you don't [sic] I promise you it will just keep on
happening. It will just keep on happening. And then they'll [sic] be more
families like that and it could be you. It could be your family. It's happened
in this county before. It's happened in the Valley before. It could be your
family, and then if it was your family and when you're back there deliberating
you think wow. . . .


(emphasis added). The quoted excerpt was the only instance in which the Guerras'
counsel suggested the jury view the case from this perspective.

 While we acknowledge that it is generally improper to ask jury members to consider
a case by putting themselves in the place of the plaintiff, Fambrough v. Wagley, 169
S.W.2d 478, 482 (Tex. 1943), we will not consider the above comment in isolation from the
remainder of the argument. See Sanchez v. Espinoza, 60 S.W.3d 392, 396 (Tex.
App.-Amarillo 2001, pet. denied) (citing Williams v. State, 826 S.W.2d 783, 785-86 (Tex.
App.-Houston [14th Dist.] 1992, pet. ref'd)). Rather, examined in context, the complained-of language can be viewed as part of the Guerras' plea for exemplary damages. In fact,
the argument of counsel that followed the quoted excerpt reminds the jury of the numerous
other incidents of wrongdoing by appellants and asks them to consider what the
appropriate consequences should be for a "repeat offender." The purpose of exemplary
damages is to punish wrongdoing and transgressions of societal standards, see State
Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408, 416 (2003)
(stating that punitive damages "are aimed at deterrence and retribution), and counsel's
argument could be viewed as an attempt to apply that law to the facts of the case. See
Sanchez, 60 S.W.3d at 396. Against that backdrop, we cannot conclude that counsel for
the Guerras made an improper appeal to the jurors. Moreover, because it occurred only
once during counsel's argument and encompassed only seven lines of a nearly fifteen
page argument, the nature, degree, and extent of the allegedly improper appeal does not
constitute harmful, reversible error. See Reese, 584 S.W.2d at 839. Appellants' sixth
issue is overruled. 

E. Cumulative Error

 By their seventh issue, appellants ask this Court to reverse the verdict and remand
the case for new trial because of cumulative error at trial. However, in their brief,
appellants provide no argument or citation to the record or any applicable authority
supporting this issue. We conclude, therefore, that this issue has been inadequately
briefed and, thus, waived by appellants. See Tex. R. App. P. 38.1(i). Appellants' seventh
issue is overruled.

III. CONCLUSION

 The portion of the trial court's judgment regarding liability and actual damages is
affirmed. However, in light of the charge error regarding the predicate conduct necessary
to overcome the statutory cap, we modify the portion of the judgment awarding exemplary
damages in excess of the statutory cap. See Tex. Civ. Prac. & Rem. Code Ann. §
41.008(c). The judgment is modified to reflect an exemplary damages award of $750,000
against each appellant-- for a total of $1.5 million--which shall be apportioned among the
appellees pursuant to the jury's findings: seventy percent to Mrs. Guerra and ten percent
to each Guerra daughter. See id. § 41.008(b); Tex. R. App. P. 43.2(b); Seminole Pipeline
Co., 979 S.W.2d at 752. We affirm the judgment as modified. (15) See Tex. R. App. P.
43.2(b).

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 8th day of October, 2009.

1. We have rearranged appellants' issues to effectively address them in order of consequence to the
disposition of this appeal. See Tex. R. App. P. 47.1.
2. SCI Texas is an indirect, wholly-owned subsidiary of SCI. SCI owns the company that owns all the
shares of SCI Texas. The record is unclear as to the identity of the intermediary company.
3. The required "blind check" involved an employee other than the employee who initially checked the
plot books to review cemetery records and the sale documents to verify that the plot had not been previously
sold, that no one was already buried in the spot, or that no other circumstance would preclude the sale of the
spot.
4. Gaspard died sometime between the moving of Mr. Guerra's coffin and the Guerra's complaint to
the funeral commission. The Guerras contend Gaspard's death was a suicide but the record is unclear as
to the cause of his death.
5. Appellants contend, in part, by their third issue that the evidence was insufficient to establish that
SCI, the corporate parent of SCI Texas, was liable for the Guerras' injuries. Appellants contend that SCI is
a separate legal entity from SCI Texas and that the relationship between the companies does not make SCI
automatically liable for the actions of SCI Texas. See generally Lucas v. Tex. Indus., Inc., 696 S.W.2d 372,
374-75 (Tex. 1984) (holding that a court will generally not "disregard the corporate fiction and hold a
corporation liable for the obligations of its subsidiary"). However, the Guerras never alleged that SCI Texas
was the alter ego of SCI. Rather, the Guerras maintained throughout the case that SCI, in addition to SCI
Texas, was directly responsible for the injuries allegedly suffered by the Guerras. Therefore, we find the alter
ego legal principles cited by appellants inapposite and will, instead, review the evidence in light of SCI's
alleged direct involvement in the events giving rise to this case. We overrule appellants' third issue to the
extent it argues that the Guerras were required to pierce the corporate veil and prove that SCI Texas is the
alter ego of SCI. 
6. Citing Crown Life Insurance Company v. Casteel, appellants also argue that because the jury
charge included only one damages question, liability is conclusively negated if one cause of action is
disproved. 22 S.W.3d 378, 387-88 (Tex. 2000). However, we do not reach this sub-issue on appeal because
appellants did not raise it before the trial court and, thus, failed to preserve it for our review. See Tex. R. App.
P. 33.1. 

 With regard to their contentions that the evidence did not support the jury's verdict regarding
negligence and intentional infliction of emotional distress, we need not reach this sub-issue because the
damages awarded to the Guerras are supported by the jury's verdict on trespass. Thus, our determination
regarding the evidence supporting the trespass verdict disposes of the issue. See Tex. R. App. P. 47.1.
7. This language comports with the case-law definition of mental anguish. See Parkway Co. v.
Woodruff, 901 S.W.2d 434, 444 (Tex. 1995).
8. Compare Wackenhut Corrections Corporation v. de la Rosa, in which we held that the plaintiffs in
a wrongful death case involving a close family member need not present direct evidence of their anguish and
establish that they had suffered a substantial disruption in their daily routines, reasoning that evidence of a
close familial relationship was sufficient to create an inference of mental anguish. No. 13-06-00692-CV, 2009
WL 866791, at *34 (Tex. App.-Corpus Christi Apr. 2, 2009, no pet. h.). 
9. Appellants cite Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) for this
quoted characterization. 
10. We note that appellants do not link their complaint regarding the admission of evidence to any of
the theories of liability, instead opining generally throughout the issue that the evidence was inflammatory and
prejudiced the "verdict." See Tex. R. App. P. 38.1(i) (requiring the brief to contain a "clear and concise
argument for the contentions made"). Appellants do, however, directly challenge the effect of the evidence
on the jury's award of exemplary damages, and as such, we will construe appellants' fifth issue as an
argument against admission of certain evidence with regard to exemplary damages. See Tex. R. App. P. 47.1.
11. Appellants do not challenge whether the Guerras were entitled to exemplary damages.
12. The Guerras testified at trial that they would use the money they received from a favorable verdict
to appoint a trustee to monitor and police Mont Meta and other cemeteries in the Rio Grande Valley. 
13. See Southland Corp. v. Burnett, 790 S.W.2d 828, 830 (Tex. App.-El Paso 1990, no writ) (citing
Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex. 1988)). 
14. Appellants also contend by their second issue that the evidence is insufficient to prove that they
engaged in the felonious conduct about which the jury was asked in question 11. Because we have concluded
that question 11 is legally erroneous, however, we do not reach this sub-issue on appeal. See Tex. R. App.
P. 47.1. 

 In their second issue, appellants then summarily assert that the amount of exemplary damages
awarded was also unsupported by the evidence. However, we conclude this contention was inadequately
briefed. Without argument or authority, appellants' bare assertions regarding the evidentiary support for the
amount of damages do not suffice; the argument is thus waived on appeal. See Tex. R. Civ. P. 38.1(i). 


 
15. In their second issue, appellants argue that the exemplary damages award was excessive. Citing
State Farm Mutual Automobile Insurance Company v. Campbell, appellants appear to challenge the award
on the basis of federal due process. 538 U.S. 408 (2003). However, appellants' challenge pertains only to
the $4 million of exemplary damages awarded by the jury, not to the modified award of $750,000 against each
defendant affirmed by this opinion. We, therefore, do not reach this issue on appeal because an award that
falls within the statutory cap is generally presumed to comport with due process. See Tony Gullo Motors I,
Inc. v. Chapa, 212 S.W.3d 299, 318 (Tex. 2006).