**AFFIRM; and Opinion Filed May 7, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-11-01536-CV**

_____

**HYDROSCIENCE TECHNOLOGIES, INC., Appellant**

**V.**

**HYDROSCIENCE, INC., WHITEHALL CORPORATION, AVIATION SALES COMPANY, TIMCO AVIATION SERVICES, INC. AND ROY RIMMER, Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-04434**

## OPINION

Before Justices Moseley, O'Neill, and Lewis
Opinion by Justice O'Neill

Appellant Hydroscience Technologies, Inc. (HTI) appeals the trial court's November 7, 2011final judgment, which incorporated three partial summary judgment orders from January 27, 2011, April 12, 2011, and June 9, 2011, in favor of appellees Hydroscience, Inc. (HSI), Whitehall Corporation (Whitehall), TIMCO Aviation Services, Inc. (TIMCO), Aviation Sales Company (AVS), and Roy Rimmer. In six issues, HTI challenges HSI's standing, the three partial summary judgment orders, the final judgment, and the award of HSI's attorneys' fees and costs. We affirm the trial court's judgment.

## Background

In 1996, HSI acquired 818,182 shares of preferred stock when it entered into an Asset Contribution Agreement with HTI. HSI received the stock in exchange for transferring to HTI

substantially all of its assets valuing approximately $4.5 million. Whitehall, the parent company of HSI, approved the agreement. HSI received a stock certificate issued in its name. The certificate contains restrictions on how and when the stock can be transferred. The front of the certificate states it is "transferrable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed." The reverse side provides:

> The shares evidenced by this certificate have not been registered under the Securities Act of 1933 ("the Act") or under any applicable state law and such shares may not be sold, transferred, assigned, or otherwise disposed of unless a registration statement, under the Act with respect to such disposition shall then be in effect or unless the person requesting the transfer of such shares shall furnish with respect to such transfer, an opinion of counsel (both counsel and opinion to be satisfactory to the Corporation) to the effect that such sale, transfer, assignment, or disposition will not involve any violations of the Act or any superseding statute or any applicable state law.

HSI has held the stock certificate in its possession since 1996, and it currently remains in its possession. There is no evidence the certificate was ever endorsed, registered under the Act, or that any attorney issued an opinion that a transfer would not violate state or federal law.

In 1999, a dispute arose between Whitehall and HTI regarding past-due lease and promissory note payments. Whitehall filed suit against HTI. HSI admits it was not a party to the lawsuit, and the suit had no direct relationship to its stock. However, the preferred shares of stock were allegedly discussed as part of a settlement reached during mediation.

According to HTI, when the parties mediated in July of 2001, a key component of the settlement included an oral agreement to transfer HSI's 818,182 shares of preferred stock back to HTI. However, the Memorandum of Settlement makes no mention of the preferred shares.

On October 26, 2001, the trial court entered a consent judgment incorporating the Memorandum of Settlement. The consent judgment "ORDERED that the parties' agreement to

the final disposition of this case, which is attached hereto, is accepted by and adopted by the Court as its judgment in this case . . . . all relief not granted herein for or against every party hereto is denied."

HSI never transferred the original stock certificate, but HTI asserts it paid $100,000 in monthly installments for the stock. The balance for the alleged stock purchase was paid in full on October 15, 2004. At that point in time, HTI believed the preferred shares had been transferred back to it.

HTI continued to believe it owned the stock until it received a telephone call from Kevin Carter, the Co-CEO and CFO of TIMCO,[1] claiming he had found old documents indicating HSI had a forty-five percent ownership in HTI. As a shareholder, HSI requested to inspect HTI's books and records. HTI responded by sending the Memorandum of Settlement and claiming it owned the preferred shares. Carter, however, argued the Memorandum of Settlement did not mention the transfer or relinquishments of the preferred shares. Based on the records in his possession, Carter firmly believed Whitehall or HSI owned forty-five percent of HTI. On March 29, 2012, he sent a demand letter to inspect HTI's books and records.

After HTI refused the inspection, HSI filed the current lawsuit seeking a declaration that it owns the preferred shares and seeking an order to inspect HTI's books and records. After HTI answered, HSI filed a traditional and no-evidence motion for summary judgment on July 23, 2010. On January 27, 2011, the trial court overruled HTI's objections to HSI's summary judgment evidence and declared "[HSI] owns 818,182 shares of preferred stock in Defendant Hydroscience Technologies, Inc. and has all rights of a shareholder of the Defendant."

On March 4, 2011, HSI filed a second traditional motion for summary judgment on HTI's counterclaims and third-party claims. The trial court granted this motion on April 12, 2011. A

---

[1] TIMCO was the successor of AVS, which was the parent company to Whitehall, which was the parent company to HSI.

third motion for summary judgment was granted on June 9, 2011, which discussed claims raised in HTI's third amended answer. The trial court signed a final judgment incorporating its rulings from the three partial summary judgments and awarded attorneys' fees and costs in favor of HSI. This appeal followed.

**Standing**

In its first issue, HTI argues HSI lacks standing to pursue its declaratory judgment because the evidence shows that either Whitehall or AVS owns the stock, not HSI. HSI responds there is no evidence that any party other than HSI owned the stock but given the fact that it is a wholly-owned subsidiary of Whitehall, who is a wholly-owned subsidiary of TIMCO, it is not unlikely that in past situations, the other subsidiaries may have referred to itself as the stock owner.

Standing is a prerequisite to subject matter jurisdiction, and subject matter jurisdiction is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Standing must be resolved first before the merits of an issue may be addressed. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). The general test for standing requires that a real controversy exists between the parties, which will be actually determined by the judicial declaration sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Further, to have standing a party must be "personally aggrieved" and the injury "concrete and particularized, actual or imminent, not hypothetical." *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 550 (Tex. App.—San Antonio 2011, no pet.). A party's standing is determined at the time suit is filed, and we look to the facts alleged in the petition and may consider other evidence in the record, if necessary, to resolve the question. *Id.*

In its petition for declaratory judgment, HSI alleged it received 818,182 shares of HTI stock as part of an Asset Contribution Agreement. Whitehall "approved, authorized, ratified, and

–4–

adopted" the agreement. HSI still has the stock certificate, in its name, in its possession. It has never transferred or sold the stock to another party.

After HSI demanded to review HTI's corporate books, HTI claimed it owned the stock based on the mediated settlement agreement with Whitehall. Based on these facts in HSI's pleadings, HSI has pleaded a real controversy between the parties as to who owns the stock, and the controversy will be determined by the declaratory judgment sought. *See HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 773 (Tex. App.—Dallas 2012, pet. filed). Based on its claim to own the stock and its possession of the stock certificate, HSI certainly has a sufficient relationship with the lawsuit to have a justiciable interest in the outcome.

While we acknowledge evidence suggesting Whitehall or AVS may own the stock, it is undisputed these entities are related in that AVS was the parent company to Whitehall, which was the parent company to HSI. These entities have not filed any pleadings challenging HSI's ownership of the stock. Thus, HTI's argument that there is a fact issue as to which of the appellees owns the stock does not affect the ultimate outcome of stock ownership as between appellees and HTI. Thus, we conclude HSI had pleaded facts to support its standing to pursue its claims. We overrule HTI's first issue.

### Summary Judgment Standard of Review

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). The standard of review for a traditional summary judgment is well known. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Green v. McKay*, 376 S.W.3d 891, 897 (Tex. App.—Dallas 2012, pet. denied).

The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d

at 548–49.  If the movant satisfies its burden, the burden shifts to the non-movant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied).  We consider the evidence in the light most favorable to the nonmovants.  *See Nixon*, 690 S.W.2d at 549.  Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.  *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

When a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify the ground or grounds on which it was based, the party appealing that order must negate all possible grounds upon which the order could have been granted.  *See Green*, 376 S.W.3d at 898.  We will affirm the summary judgment if any theory advanced by the movant is meritorious.  *Id*.; *see also Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### January 27, 2011 Traditional and No Evidence Motions for Summary Judgment

HSI filed its original petition seeking a declaration that it owns the stock and has rights as a shareholder to examine HTI's books and records.  HTI asserted a general denial and further alleged that HSI could not recover in the legal capacity in which it sued because it was not a shareholder in HTI, and HSI was not acting in good faith or with a proper purpose in seeking a review of the books and records.

The purpose of seeking a declaratory judgment is to settle and afford relief of uncertainty and insecurity about rights, status, and other legal relations.  TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008); *Bright v. Addison*, 171 S.W.3d 588, 606 (Tex. App.—Dallas 2005, pet. denied).  A trial court has discretion to enter a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties.  *Bright*, 171 S.W.3d at 606.

HSI filed its first traditional and no-evidence motions for summary judgment and argued there was no genuine issue of material fact regarding HSI's ownership of the stock.[2] HSI attached to its motion the affidavit of Kevin Carter, who was the co-president of TIMCO, the asset contribution agreement between HSI and HTI, the stock certificate, the Memorandum of Settlement, and the final consent judgment entered by the trial court after mediation. HSI relied on the law regarding parol evidence, settlement privilege, and Texas Rule of Civil Procedure 11 to support its claims. HTI responded that HSI's arguments were simply a "preemptive attempt to exclude . . . extrinsic evidence showing a prior oral agreement between the parties to transfer the stock," and fact issues existed preventing summary judgment. The trial court denied HSI's motion on August 30, 2010, but later granted the motion after reconsideration on January 27, 2011.

We begin our discussion with Kevin Carter's affidavit, which HSI attached to its motion for summary judgment. He stated he is the "co-President of TIMCO Aviation Services, Inc. ('TIMCO'). TIMCO is the parent company of Whitehall Corporation, which in turn is the parent company of Plaintiff, Hydroscience, Inc. ('HSI')." He further stated the facts within the affidavit were within his personal knowledge and true and correct. He stated HSI has not transferred the shares it received as part of the 1996 Asset Contribution Agreement nor has it entered into any agreement to transfer them. He further referenced the Asset Contribution Agreement between HTI and HSI, the stock certificate issued to HSI, the Memorandum of Settlement, and the Final Consent Judgment.

HTI objected to Carter's affidavit on the basis of lacking personal knowledge; however, the trial court overruled HTI's objection. On appeal, HTI argues Carter's affidavit does not state

---

[2] Although HSI labeled its motion a traditional and no-evidence summary judgment, HSI presented evidence that could conclusively establish no genuine issue of material fact regarding stock ownership. Therefore, we consider his entire motion a traditional motion for summary judgment and review it accordingly. *See, e.g., Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 667 (Tex. App.—Waco 2002, no pet.).

that he has any position with HSI, that he has any knowledge of HSI's business transactions, or that he was involved in any of the settlement negotiations between HTI and Whitehall; therefore, he has no personal knowledge regarding the stock. We disagree.

An affidavit supporting a motion for summary judgment must "be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). Thus, for a summary judgment affidavit to have probative value, the affiant must swear the facts in the affidavit reflect his personal knowledge. *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2010, no pet.). An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts. *Id.* at 553.

In *Requipco, Inc. v. Am-Tex Tank & Equipment, Inc.*, 738 S.W.2d 299, 301 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), the court determined that an affidavit in which the affiant stated he was the "President of AM-TEX TANK & EQUIPMENT, INC. (formerly WALKER TANK AND EQUIPMENT, INC.)," had full authority to make the affidavit, and had personal knowledge of the facts stated therein was sufficient to establish personal knowledge. Despite the affidavit not stating how the affiant gained his personal knowledge, the statement of affiant's job title as president was sufficient. *Id.* In reaching this conclusion, the court was not persuaded by the appellant's argument that the affidavit did not establish affiant's personal knowledge because he was the president of Am-Tex Tank & Equipment and not its predecessor, Walker Tank & Equipment. *Id.* at 301–02.

Similar to the facts here, Carter stated he was president of TIMCO which is the parent company of Whitehall Corporation, which in turn is the parent company of HSI, and he had personal knowledge of the facts within the affidavit. As president, he would logically have

knowledge of the stock information for TIMCO, Whitehall, and HSI. *See, e.g.*, *Valenzuela*, 317 S.W.3d at 554 n.3. (noting that "a company's president or other officer logically would have knowledge of current debts owed to the company"). Moreover, his affidavit references numerous attached documents that further support HSI's claim of ownership of the stock. References to true and correct copies of documents in support of an affidavit also establishes personal knowledge. *See, e.g., Lazidis v. Goidl*, 564 S.W.2d 453, 455–56 (Tex. App.—Dallas 1978, no writ) (personal knowledge established when the affiant recited that a true and correct copy of a real estate note was attached to his affidavit and that appellee had been the owner and holder of the real estate note at all times since delivery of said note). Accordingly, the trial court did not abuse its discretion in overruling HTI's objections to Carter's affidavit and considering it as evidence of HSI's ownership of the stock. *See Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex. App.—Dallas 2007, no pet.) ("We review the trial court's admission or exclusion of summary judgment evidence under an abuse of discretion standard.").

We now consider whether the stock certificate attached to HSI's summary judgment motion supports its ownership of the stock. The stock certificate states "This certifies that Hydroscience, Inc. is the owner of 818,182 fully paid and non-assessable shares of Preferred Stock $0.01 par value of Hydroscience Technologies, Inc." The certificate further states it is "transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed." The back of the stock provides further transfer restrictions and provides that the shares may not be sold or transferred unless registered under the Securities Act of 1933 or unless the person requesting the transfer obtains an attorney's opinion that the sale or transfer will not violate the Act.

It is undisputed that none of the above-stated transfer requirements occurred. It is further undisputed that the certificate is still in HSI's possession. HTI argues mere possession does not

prove ownership, and there is no legal significance to the restrictions stated on the stock because such requirements are for the protection of the corporation and do not incapacitate the owner of the stock from transferring it by equitable assignment. HTI cites *H. Seeligson & Co. v. Brown*, 61 Tex. 114 (Tex. 1884) and *Adams v. Texhoma Oil & Refining Co.*, 262 S.W. 139 (Tex. Civ. App.—Amarillo 1924, no writ) to support its position. However, in both of those cases, the blank certificate on the back of the stock certificates had been signed and the certificates delivered to the transferee. *See H. Seeligson & Co.*, 61 Tex. at 115–16; *Adams*, 262 S.W. at 140. Neither of those events happened in the present case. Thus, these cases are inapplicable.

We acknowledge the case law that holds delivery of a stock certificate or endorsement of said certificate is not necessarily required to show a transfer of stock. *See Greenspun v. Greenspun*, 194 S.W.2d 134, 137 (Tex. App.—Fort Worth 1946), *aff'd*, 145 Tex. 374 (1946) ("As between transferor and transferee, it seems to be the rule that transfer of title may take place though there is no delivery of the certificates themselves, no endorsement of them, nor transfer of them on the books of the corporation, and even though the sale by parol."). However, a party must show "whether the minds of transferor and transferee met, whether there was an intention that the stock should then and there be vested in the transferee, and whether there were acts in the nature of a symbolical delivery of the property." *Id.* at 137. Thus, HSI's possession of the stock certificate also establishes its ownership unless HTI is permitted to rely on evidence of an agreement during the 2001 mediation to show intent between the parties to transfer the stock and thereby create a fact issue.

HTI argues it raised a fact issue regarding ownership of the stock because it presented evidence that during the 2001 mediation, HTI and either Whitehall, AVS, or HSI orally agreed to transfer the stock. HSI objected to HTI's evidence and contended the mediation privilege prevents any consideration of what may have occurred during the mediation. HTI responded that

HSI waived our consideration of the mediation privilege on appeal by failing to obtain a written ruling from the trial court.

We begin by determining whether HSI was required to obtain a written ruling on its objection asserting the mediation privilege. Generally, a summary judgment ruling on evidence must be reduced to writing, signed by the trial court, and entered of record. *S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 855 (Tex. App.—Dallas 2011, no pet.). However, there is a distinction between summary judgment evidence that is a defect in form and a defect in substance. A defect is substantive if the evidence is incompetent, and it is formal if the evidence is competent but inadmissible. *Coleman v. Woolf*, 129 S.W.3d 744, 748 (Tex. App.—Fort Worth 2004, no pet.); *Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Formal defects may be waived by failure to object, and if waived, the evidence is considered. *Mathis*, 982 S.W.2d at 52. Substantive defects are never waived because the evidence is incompetent and cannot be considered under any circumstances. *Id*.

The parties have not cited to any case law holding that the failure to obtain a ruling on an objection pertaining to the mediation privilege is a substantive defect. However, section 154.053(c) of the Texas Civil Practice and Remedies Code provides that "Unless the parties agree otherwise, all matters . . . during the settlement process are confidential and may never be disclosed to anyone, including the appointing court." TEX. CIV. PRAC. & REM. CODE ANN. § 154.053(c) (West 2011); *see also* § 154.073(a)-(b) (West 2011) (explaining communications and any records made during mediation are confidential and may not be used as evidence in a judicial proceeding). Because these statutes indicate such privileged information cannot be disclosed or considered, it therefore follows it is a substantive defect that cannot be waived by failing to obtain a ruling from the trial court. *See, e.g., St. Luke's Episcopal Hosp. v. Garcia*, 928 S.W.2d 307, 310 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding) (noting relator's primary

–11–

objections to discovery "are substantive objections relating to privilege"). Accordingly, we shall address HSI's argument that the mediation privilege bars consideration of the evidence submitted by HTI to raise a fact issue as to ownership.

Section 154.073 of the Texas Civil Practice and Remedies Code provides the following regarding "Confidentiality of Certain Records and Communications" involved in alternative dispute resolution:

> (a) Except as provided by Subsections (c), (d), (e), and (f), a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.
>
> (b) Any record made at an alternative dispute resolution procedure is confidential, and the participants or the third party facilitating the procedure may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute.
>
> (c) An oral communication or written material used in or made a part of an alternative dispute resolution procedure is admissible or discoverable if it is admissible or discoverable independent of the procedure.

TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(a)–(c) (West 2011).

Further, "[u]nless the parties agree otherwise, all matters, including the conduct and demeanor of the parties and their counsel during the settlement process, are confidential and may never be disclosed to anyone, including the appointing court." *Id.* § 154.053(c).

Both parties cite to two different cases from this Court to support their position as to why the mediation privilege should or should not apply to these facts. HTI relies on *Avary v. Bank of America, N.A.*, 72 S.W.3d 779 (Tex. App.—Dallas 2002, pet. denied) and HSI relies on *In re Empire Pipeline Corporation*, 323 S.W.3d 308 (Tex. App.—Dallas 2010, orig. proceeding).

–12–

We begin our discussion with *Avary*. In that case, Avary, as guardian of the estates of minors, brought suit against the fiduciary bank based on the bank's actions during the mediation of an underlying wrongful death suit. *Avary*, 72 S.W.3d at 785. Specifically, Avary alleged the bank's rejection of a $450,000 settlement offer and the acceptance of a much smaller allocation was a breach of the bank's fiduciary duty as executor of the estate. *Id*. As part of discovery, Avary sought to obtain information from the mediation, most of which the trial court denied. The trial court granted the bank's summary judgment because Avary presented no evidence of breach of fiduciary duty, negligence, or conspiracy to defraud, as each cause of action arose "out of confidential and inadmissible statements purportedly made at Mediation." *Id*. at 786.

We noted "[t]here is no question that confidentiality of communications is an important part of the statutory scheme of alternative dispute resolution" and that "proponents of mediation stress that confidentiality is critical to the success of the process." *Id*. at 798. We concluded the mediation privilege did not apply because Avary sought to prove a "new and independent tort" that allegedly occurred between her and her fiduciary during mediation. *Id*. at 798. She was not trying to discover evidence to obtain additional funds or establish any further liability against the parties that had peaceably resolved the underlying dispute. Thus, the information she sought through discovery would not disturb the underlying settlement agreement. *Id*. at 800. "It is one thing to order discovery from a party alleged to have committed a tort during the mediation process; it is another to reach across the mediation table to parties who have settled the claims against them." *Id*. at 801. We ultimately held that

> [O]n "the facts before us, . . . [w]e conclude only that where a claim is based upon a new and independent tort committed in the course of the mediation proceedings, and that tort encompasses a duty to disclose, section 154.073 does not bar discovery of the claim where the trial judge finds in light of the "facts, circumstances, and context," disclosure is warranted.

*Id*. at 803.

HSI relies on *In re Empire Pipeline Corporation* to support its position that HTI's attempts to use evidence from the mediation is barred. In *Empire Pipeline*, the underlying cause of action involved a breach of contract relating to oil and gas exploration, which the parties settled through mediation. *Id.* at 309. Two months after the agreement, Gunter sought to vacate the agreement; however, the trial court entered the settlement agreement and dismissed his claims. *Id.* Gunter later filed a declaratory judgment action asserting Empire Pipeline was not complying with the settlement agreement. *Id.*

As part of the declaratory judgment action, Gunter sought discovery of documents related to the prior mediation. *Id.* at 310. Gunter described the scope of his discovery in a motion to compel. "Plaintiff is not seeking the work product of counsel, nor his trial strategy, but rather information going to the very heart of the issue: was an agreement actually reached at the mediation, and if so, what were its terms?" *Id.* The trial court granted, in part, and denied, in part, the motion to compel. *Id.*

Empire Pipeline sought mandamus relief arguing the documents and testimony ordered by the trial court were, among other things, protected by the ADR privilege. Gunter responded the mediation privilege was not absolute and did not apply to his circumstances. *Id.* at 311. He further contended that "*Avary* provides a roadmap for resolution of the issues presented."

We disagreed and distinguished the facts from *Avary*. We noted the discovery in that case involved information to support a new and independent tort, "the pursuit of which would not disturb the settlement reached at the mediation proceeding." *Id.* at 313 (citing *Avary*, 72 S.W.3d at 800)). Gunter's attempt to discover evidence from mediation went to the heart of his lawsuit, which was seeking a declaration regarding the terms of the mediated settlement agreement. He was not seeking evidence to support a new and independent tort that occurred outside of mediation discussions, but rather, wanted to reach across the mediation table and

–14–

potentially disturb the prior settlement reached between the parties. We concluded all such discovery was barred by Texas Civil Practice & Remedies Code sections 154.073(a) and (b).

Based on the present facts, we conclude the *Empire Pipeline* reasoning applies. In attempting to use evidence from the mediation, HTI is trying to determine what the parties agreed to in regards to the preferred stock. This is exactly what we have previously held is not allowed. *See Empire Pipeline Corp.*, 323 S.W.3d at 314. While HTI argues *Empire Pipeline* "only addresses the narrow issue of whether a party can discover another party's communications in mediation in order to avoid enforcement of the settlement agreement in a suit between the same parties to enforce the settlement," we do not interpret its holding so narrowly.

This is not a situation similar to *Avary* where HTI is trying to use evidence from mediation to support a new and independent tort. Rather, HTI is trying to obtain evidence to potentially change the settlement agreement. We agree with HTI that the word "change" does not appear in reference to the settlement agreement in *Empire Pipeline*. Rather, the holding discusses a party's attempt to avoid enforcement of a settlement agreement but as previously stated, we refuse to construe the application of the mediation privilege so narrowly.

"A cloak of confidentiality surrounds mediation, and the cloak should be breached only sparingly." *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 260 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.). Under these facts, to allow HTI to use alleged discussions from the mediation regarding the stock would undermine the very purpose of confidentiality in the mediation process. Parties must not be allowed to use evidence from mediation to dispute terms of a settlement agreement, particularly years later, as is the case here. To do so would chill the overall purpose of mediation, which is to allow parties to come to the table knowing they can speak freely about their dispute and have confidence what they say will be confidential. To conclude otherwise defeats section 154.073 and section 154.053(c) of the Texas Civil Practice

–15–

and Remedies Code. Accordingly, HTI may not rely on evidence from the 2001 mediation to create a fact issue as to ownership of the stock because such information is protected by the mediation privilege.

In addition to the mediation privilege, HSI also asserts the parol evidence rule bars use of any evidence presented by HTI to contradict the consent judgment and Memorandum of Settlement. HTI responds the Memorandum of Settlement is an ambiguous, incomplete document; therefore, the parol evidence rule does not apply. However, HSI responds HTI cannot collaterally attack the consent judgment. We agree with HSI.

We begin by discussing the law as applied to consent or agreed judgments. An agreed judgment must be interpreted as if it were a contract between the parties, and the interpretation of the judgment is governed by the laws relating to contracts. *Miller v. Miller*, 700 S.W.2d 941, 951 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (on rehearing). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Id.* If the intention expressed on the face of the contract is doubtful, resort may be had to parol evidence of the situation and the surroundings of the parties to resolve the doubt. *Id.*

The parol evidence rule functions to make the instrument sued on the sole repository of the legal transaction. *Lawrence Gen. Corp. v. Anchor Post Prod. of Tex., Inc.*, No. 05-95-01771-CV, 1997 WL 78913 at *2 (Tex. App.—Dallas Feb. 26, 1997, no writ) (not designated for publication). In other words, the terms of the transaction must be derived from the writing alone. Where the instrument sued on is a professedly partial or incomplete agreement, however, the rule excluding parol evidence does not apply. *Id.*; *see also Garner v. Redeaux*, 678 S.W.2d 124, 128 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). An instrument is incomplete when it

–16–

refers to terms or understandings not embraced in its provisions. *Lawrence Gen. Corp.*, 1997 WL 78913 at *2.

It is undisputed the Memorandum of Settlement entered into between HTI and Whitehall after the 2001 mediation makes no mention of HSI's 818,182 shares of preferred stock, much less any agreement to transfer the stock back to HTI. However, part of the Memorandum of Settlement attached to the consent judgment states "The parties will more fully memorialize the provisions of their agreement in further instruments to be prepared by counsel." Thus, on its face, the document is incomplete because it refers to potential terms and conditions not embraced within its four corners. *See id.* (finding a letter of intent incomplete when it specifically stated terms and conditions of the transaction were undetermined). Accordingly, HTI's parol evidence that is not protected by the mediation privilege could be admissible to create a fact issue.[3] However, under these facts, we conclude it is not.

To establish a fact issue as to the underlying settlement agreement, we would have to allow HTI to attack the final consent judgment. This we cannot allow. A collateral attack is "an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). While HTI vehemently argues it is not trying to avoid the force of the underlying judgment against Whitehall and it is not asserting any new, subsequent claims against Whitehall that would affect the underlying judgment, we do not agree. If this court were to conclude a fact issue existed and remanded the issue of stock ownership back to the trial court, the end result would be HTI offering evidence to change the underlying 2001 settlement agreement, which has already

---

[3] Included in the summary judgment record are affidavits explaining that the parties agreed to more fully memorialize details of the settlement post-mediation. The record also includes several drafts of settlement agreements that mention transfer of the stock.

–17–

been entered as a final judgment of the court and representing the final agreement between the parties. *See Liberty Mut. Fire Ins. Co. v. Crane*, 898 S.W.2d 944, 948 (Tex. App.—Beaumont 1995, no writ) (noting a settlement agreement incorporated into an agreed judgment "has the same degree of finality and binding force as one rendered by a court at the conclusion of adversary proceedings").

The proper vehicle for challenging the consent judgment was through a bill of review. "[A] bill of review is the exclusive remedy since the time for an appeal from the consent judgment has expired." *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985); *In re A.L.H.C.*, 49 S.W.3d 911, 917 (Tex. App.—Dallas 2001, pet. denied). HTI has never filed a bill of review and any such pleading would now be untimely, as the residual four-year statute of limitations applies. *See Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008)).

Accordingly, we conclude HTI failed to raise a genuine issue of material fact as to HSI's ownership of the 818,182 shares of preferred stock. Because HSI establishes its ownership as a matter of law, the only remaining way HTI can prevail is if it established a fact issue on one of its affirmative defenses raised in its response. *See McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 323 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting that when a party asserts an affirmative defense to defeat summary judgment, the party must urge the defense in the response and present sufficient evidence to create a fact issue on each element). Although HTI raised numerous affirmative defenses in its response, on appeal it only contends it created a fact issue as to the affirmative defenses of ambiguity, mutual mistake, and fraud. Accordingly, we shall only address these affirmative defenses. *See Saenz v. Martinez*, No. 04-07-00339-CV, 2008 WL 4809217, at *10 n.3 (Tex. App.—San Antonio Nov. 5, 2008, no pet.) (mem. op.) (reviewing only those affirmative defenses raised below and presented as grounds for reversal on appeal).

When asserting ambiguity as an affirmative defense, the pleading must set out the alleged ambiguous portion of the contract and the meaning or construction relied on by the party asserting ambiguity. *See World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 680 (Tex. App.—Fort Worth 1998, pet. denied). HTI argues the Memorandum of Settlement and consent judgment are ambiguous regarding the "follow on rights," which it contends supports its position that transfer of the stock was intended as part of the settlement agreement. Specifically, it claims the parties agreed that for a five-year period following execution of the settlement, the transferor would be entitled to recover and receive a twenty-five percent share of the first $1,000,000 in proceeds from the sale of HTI and a ten percent share of all proceeds over $1,000,000. It further argues, "It makes no sense for the parties to include these 'follow on rights' in the Memorandum of Settlement unless the Preferred Shares were being relinquished." Thus, it asserts there is an ambiguity as to whether the "follow on rights" indicate an intent to compensate the transferor for the return of the preferred shares. However, as discussed previously, HTI may not rely on evidence from the mediation to create a fact issue, and it cannot rely on parol evidence to attack the consent judgment. Thus, HTI has not presented any competent summary judgment evidence to raise a fact issue as to its affirmative defense of ambiguity.

The next affirmative defense raised by HTI is mutual mistake. To establish the defense of mutual mistake in a written instrument, HTI must plead and prove (1) the original agreement, and (2) a mutual mistake made in reducing the original agreement to writing. *Peters v. Gifford-Hill & Co.*, 794 S.W.2d 856, 860 (Tex. App.—Dallas 1990, writ denied). The party asserting mutual mistake must prove what the true agreement was, but "his case is not made by proof that there was an agreement which is at variance with the writing. He must go further and establish the fact that the terms and provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake." *Id*. (citing *Sun Oil Co. v. Bennett*, 84 S.W.2d

–19–

447, 451 (Tex. 1935)); *see also Balboa Ins. Co. v. K&D & Assoc.*, 589 S.W.2d 752, 757 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) (evidence must show both parties were acting under the same misunderstanding of the same material fact to establish mutual mistake). Mutual mistake is generally established from all of the facts and circumstances surrounding the parties, and the execution of the instrument. *Simpson v. Curtis*, 351 S.W.3d 374, 378 (Tex. App.—Tyler 2010, no pet.). Again, HTI's arguments suffer from the same flaws. HTI cannot rely on the affidavits discussing what the parties discussed during mediation to establish mutual mistake. It likewise cannot rely on the draft documents that discuss transfer of the stock to show mutual mistake because we have concluded use of any such documents results in nothing more than an impermissible attack on the consent judgment. In fact, HTI states "When the court in the Original Lawsuit signed the Judgment which incorporated the Memorandum of Settlement, it incorporated the same erroneous omission into the Judgment." While this may be true, HTI agreed to the consent judgment, and it has never challenged it. We will not now allow such a challenge.

The last affirmative defense raised by HTI is common law and statutory fraud. It claims that if HSI still owns the stock, then HTI was defrauded into believing it had acquired them. In general, fraud consists of the following elements: a material misrepresentation that was false, that was either known to be false when made or was asserted without knowledge of its truth, that was intended to be acted upon, that was relied upon, and that caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied).

HTI relies on *Myers v. Walker*, 61 S.W.3d 722 (Tex. App.—Eastland 2001, pet. denied) to support its position. In that case, Myers and Walker entered into a mediated settlement agreement in which Walker agreed to dismiss a lawsuit and Myers agreed to pay $110,000 in

–20–

cash and transfer $10,000 worth of stock. *Id*. at 727. Myers subsequently breached the agreement by failing to deliver the stock. *Id*. Walker then sued for breach of the settlement agreement and fraud. *Id*. After a bench trial, the court concluded Walker presented sufficient evidence that Myers did not intend to perform at the time he entered into the settlement agreement, Walker relied upon the representations, and the representations were material. *Id*. at 728. The court of appeals affirmed. *Id*. at 729.

HTI claims the circumstantial evidence in the present case is similar, if not greater, than *Myers*. It specifically contends, "At the Mediation, HSI's agents at the time (who were also AVS and Whitehall's agents) made representations that they had authority 'on behalf of AVS and Whitehall and on behalf of any other entity whose consent was necessary to convey and relinquish the Preferred Shares to HTI.'" HTI asserts this representation was material because it would not have entered into any settlement without a transfer of the stock.

We do not find *Myers* applicable. Unlike the present facts, the parties in *Myers* did not dispute the terms of the settlement agreement. There was no question regarding whether Myers was supposed to transfer stock. The agreement required him to and he failed to perform his obligation, which led to the separate suit for fraud.

Here, HTI is not asserting fraud as a separate cause of action where the *Avary* separate and independent tort doctrine may apply, but rather is asserting fraud as an affirmative defense to protest the Memorandum of Settlement and consent judgment. For the reasons repeatedly mentioned, HTI is barred from relying on any statements from the mediation to support its fraud defense and in turn, challenge the consent judgment.[4]

---

[4] HTI also cites *Flood v. Katz*, 294 S.W.3d 756, 763 n.2 (Tex. App.—Dallas 2009, pet. denied) for the proposition that evidence of fraudulent representations made during mediation are allowed to prove a separate cause of action. We agree that we noted in a footnote that Flood was not prevented from proving a separate cause of action "simply because some of the acts complained of took place during compromise negotiations; however, Flood was not trying to use such communications as an affirmative defense. Moreover, the main issue on appeal in that case did not involve use of the mediation privilege. Rather, we noted that the appellant "argues generally that evidence of communications that

Having concluded that HSI conclusively proved ownership of the stock and HSI failed to raise a genuine issue of material fact or raise a fact issue as to its affirmative defenses, the trial court did not err in granting the January 27, 2011 partial summary judgment in favor of HSI. Thus, HTI's second issue is overruled.

However, our analysis does not end here. Before the trial court granted summary judgment, HTI filed counterclaims against HSI and third party claims against Whitehall, AVS, TIMCO, and Roy Rimmer, which included claims for declaratory judgment, reformation, breach of contract, common law and statutory fraud, negligent misrepresentation, conversion, and promissory estoppel all based on the central premise that HTI failed to receive the stock it bargained for during the 2001 mediation. It also asserted fourteen affirmative defenses.

After this first partial summary judgment was granted in favor of HSI, HSI and the third party defendants filed a general denial and asserted the following affirmative defenses to HTI's counterclaims and third party claims: (1) mediation privilege, (2) parol evidence rule, (3) statute of limitations and laches doctrine, (4) impermissible collateral attack on a final judgment, (5) invited error doctrine, and (6) waiver and estoppel. On March 4, 2011, HSI and the third party defendants filed another traditional motion for summary judgment as to HTI's counterclaims and third party claims. We discuss this motion below.

### April 12, 2011 Order Granting Traditional Motion for Summary Judgment

HSI and the third party defendants (referred to jointly now as "HSI") argued in this motion that the undisputed facts conclusively negated one or more elements of each of HTI's counterclaims or an affirmative defense applied to each claim. HSI specifically asserted (1) the mediation privilege, parol evidence, and Rule 11 bars the counterclaims; (2) a party cannot

---

took place during the July 2003 mediation are confidential pursuant to Rule 403 of the rules of evidence and chapter 154 of the Texas Civil Practice and Remedies Code." *Id.* Thus, we do not find this case persuasive.

collaterally attack a final judgment; and (3) the statute of limitations bars HTI's claims for breach of contract, conversion, negligent misrepresentation, and fraud.

HTI states in its brief that "This appeal addresses the trial court's error in dismissing HTI's claim for declaratory relief in the Second Motion." Thus, we need not address whether the trial court properly granted summary judgment as to its other counterclaims and third party claims. We focus our analysis only on whether HSI was entitled to judgment as a matter of law with regards to HTI's declaratory judgment claim in which HTI sought a declaration that HSI had no ownership interest in it, that it had no right to inspect its books, that it must transfer or turnover the stock to HTI, or "the Memorandum of Settlement and Judgment are ambiguous and the Court should interpret the documents to include the missing or omitted terms requiring the transfer of the Preferred Shares to HTI."

In this second motion, HSI again argued it established ownership of the stock as a matter of law and relied on the same arguments as in its original motion for summary judgment. Accordingly, the same analysis as discussed above applies, and we reach the same conclusion: HSI conclusively proved its ownership of the stock; therefore, HTI's declaratory judgment action was moot. Moreover, one may not seek a declaratory judgment to settle disputes that are already pending before a court. *Heritage Life Ins. Co. v. Heritage Group Holding Corp.*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied). At the time HTI filed its declaratory judgment, HSI's cause of action was already pending before the trial court, which would resolve the ownership issue. Therefore, the trial court did not err in granting the second partial motion for summary judgment as to HTI's declaratory judgment action. We overrule appellant's third issue.

We now turn to the third motion for summary judgment filed by HSI, which was based on HTI's third amended answer, counterclaims, and third party claims.

## June 9, 2011 Order Granting Summary Judgment

In its third amended answer, counterclaims, and third party claims, HTI added three causes of action: (1) declaratory judgment that HTI has a right to cancel the preferred stock; (2) equitable title; and (3) quasi-estoppel.[5] HSI answered and asserted "any purported new claims in the Third Amended Answer do not state a cause of action upon which relief may be granted." HSI then moved for summary judgment arguing first that "the right to cancel stock" is not a stand-alone cause of action but rather an available remedy once a party establishes stock ownership, and secondly, equitable title is a defense that applies to real estate transactions and is not a proper affirmative defense under these circumstances. We shall address each claim, beginning with HTI's equitable title cause of action.

Equitable title is the present right to compel legal title. *Smith v. Dass, Inc.*, 283 S.W.3d 537, 542 (Tex. App.—Dallas 2009, no pet.). Equitable title may be shown where the plaintiff proves it has paid the purchase price and fully performed the obligations under the contract. *Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

HTI argues it obtained equitable title in the stock, even though the stock certificate was never transferred to it, after it paid $100,000 in accordance with the Memorandum of Settlement. The Memorandum of Settlement states, in relevant part, the following:

> 1. Mutual releases of all claims and counterclaims.
>
> 2. AVS/Whitehall will release the UCC filing, if any, with respect to HTI.
>
> 3. HTI (Δ) agrees to pay AVS/Whitehall the sum of $100,000 as follows:
>
>> (a) $10,000 on or before August 24, 2001.

---

[5] HTI has not challenged the dismissal of its quasi-estoppel cause of action.

> (b) $90,000 in equal monthly installments of $2500 on or before August 24, 2004, with the first monthly payment due on August 24, 2001.

However, the Memorandum of Settlement does not mention that this exchange of payment is for return of the stock. Therefore, although HTI has presented evidence that it fully performed its obligation to pay $100,000 under the settlement agreement, nothing within the agreement indicates the payment was for the stock. And as previously concluded, HTI has not produced any competent evidence to the contrary and may not rely on any evidence of an oral agreement. Accordingly, the trial court did not err in granting summary judgment as to HTI's equitable title cause of action.

HTI also sought a declaration of "the right to cancel the Preferred Shares as a result of the prior transfer of ownership to HTI." The purpose of seeking a declaratory judgment is to settle and afford relief of uncertainty and insecurity about rights, status, and other legal relations. TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008); *Bright v. Addison*, 171 S.W.3d 588, 606 (Tex. App.—Dallas 2005, pet. denied). A trial court has discretion to enter a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties. *Bright*, 171 S.W.3d at 606. However, one may not seek a declaratory judgment to settle disputes that are already pending before a court. *Heritage Life Ins. Co.*, 751 S.W.2d at 235.

The parties agree the main question before the trial court was who owned the stock. The trial court declared in the first partial summary judgment order that HSI owns the 818,182 shares of preferred stock. While HTI has tried to argue its declaratory judgment seeks relief that is broader than a mere denial of HSI's claim, under these facts, any such argument is irrelevant. HTI has failed to establish that it has any ownership interest, either by possession or equity, in the stock. As such, it cannot maintain a declaratory judgment cause of action for the "right to

cancel Preferred Shares," because it does not own any shares to cancel.  Thus, the trial court did not err in granting summary judgment on this cause of action.  HTI's fourth issue is overruled.

**Entry of Final Judgment and Awarding HSI Attorneys' Fees and Costs**

In its fifth and sixth issues, HTI argues the trial court erred in entering a final judgment that incorporated erroneous rulings from the partial summary judgments and awarding HSI attorneys' fees and costs.  We disagree.

The Final Judgment stated it was based on "this Court's prior summary judgment rulings entered on January 27, 2011, April 12, 2011, and June 9, 2011 . . . ."  Having concluded the trial court did not err in granting the January 27, 2011, April 12, 2011, and the June 9, 2011 partial summary judgments, the trial court did not err in granting the final judgment.  Thus, HTI's fifth issue is overruled.

We likewise affirm the award of attorneys' fees and costs.  HSI sought to recover its attorneys' fees under section 37.009 of the Texas Civil Practice and Remedies Code, which permits the trial court to award reasonable and necessary attorneys' fees that are equitable and just.  TEX. CIV. PRAC. & REM. CODE ANN. §37.009.  HSI and HTI entered into a stipulation that $359,206 was a reasonable, equitable, just and recoverable amount for attorneys' fees, except "in the event that this matters is reversed or remanded for additional proceedings."  Having found no reversible error, the parties are bound by the stipulation.  Accordingly, we overrule HTI's sixth issue.

## Conclusion

Having overruled HTI's issues, the judgment of the trial court is affirmed.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

111536F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HYDROSCIENCE TECHNOLOGIES,
INC., Appellant

No. 05-11-01536-CV          V.

HYDROSCIENCE, INC., WHITEHALL
CORPORATION, TIMCO AVIATION
SERVICES, INC., AVIATION SALES
COMPANY , and ROY RIMMER,
Appellees

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-04434.
Opinion delivered by Justice O'Neill,
Justices Moseley and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees HYDROSCIENCE, INC., WHITEHALL
CORPORATION, TIMCO AVIATION SERVICES, INC., AVIATION SALES COMPANY,
and ROY RIMMER recover their costs of this appeal and the full amount of the trial court's
judgment from appellant HYDROSCIENCE TECHNOLOGIES, INC. and from the cash deposit
in lieu of cost bond.  After all costs have been paid, the clerk of the court is directed to release
the balance, if any, of the cash deposit to HYDROSCIENCE TECHNOLOGIES, INC.

Judgment entered this 7th day of May, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

–28–