

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00316-CV

---

JUST FOR FUN GRAPEVINE, INC.,                                    APPELLANTS
JOHN LEMLEY, AND LAURA
LEMLEY

V.

TEJAS FUN, L.P. AND PETER J.                                      APPELLEE
CLARK

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2011-11020-16

----------

## MEMORANDUM OPINION[1]

----------

Appellants Just For Fun Grapevine, Inc., John Lemley, and Laura Lemley

appeal the trial court's judgment awarding appellee Tejas Fun, L.P. damages and

---

[1]See Tex. R. App. P. 47.4.

the title to two dinner boats.  We modify the judgment and affirm the judgment as modified.

## Background Facts

In 2003, Peter J. Clark and John Lemley incorporated Just For Fun.  Clark was a 67% shareholder, and John and his wife Laura owned 33% of the corporation.  Pertinent to the case at hand, Just For Fun built two dinner boats, and they were titled in the corporation's name.

In 2004, Clark formed Tejas with Marshall Funk.  Clark contributed to Tejas the two boats belonging to Just For Fun.  Clark maintained that he took the boats as payment for money owed to him by Just For Fun.  John initially believed that Clark was contributing the boats to Tejas on behalf of Just For Fun and that in return, Just For Fun would own an interest in Tejas.  The boats' titles, however, were never transferred to Tejas.

Tejas and Just For Fun then entered into a lease agreement in which Tejas rented the two boats back to Just For Fun.  The lease was signed by Clark on behalf of Just For Fun.  It stated that it had "an initial term of one (1) year and eight (8) months beginning May 1, 2004[,] and . . . shall be automatically renewed for successive additional terms of one (1) year each thereafter."

In February 2008, the Lemleys purchased Clark's interest in Just For Fun.  In April 2008, Just For Fun entered into another lease agreement with Tejas for the boats.  John signed on behalf of Just For Fun, and he and Laura signed as personal guarantors.  The lease agreement stated that it had "an initial term of

2

ONE (1) year[] beginning January 01, 2008 and . . . shall be automatically renewed for successive additional terms of ONE year[] each thereafter." From 2008 to 2010, John signed a series of identical lease renewal agreements renewing the lease on the boats. The agreements stated,

> This Renewal Agreement is made and entered into between Tejas . . . and Just For Fun . . . for and in consideration of One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged.
>
> WITNESSETH
>
> 1. Lessor and Lessee hereby confirm and ratify, except as modified below, all of the terms, conditions[,] and covenants in that certain written Lease Agreement dated January 1, 2008 between Lessor and Lessee . . . .
>
> . . . .
>
> 3. Lessor and Lessee agree that the term of this Lease Agreement including all Amendment[s] and previous Renewals shall be extended for twelve (12) months. . . .

John signed on behalf of Just For Fun. Neither he nor Laura signed the renewals as personal guarantors.

In 2011, the parties began disputing what Just For Fun owed under the lease. Around this time, the Lemleys discovered that Clark's interest in Tejas was his personally and that Just For Fun had no interest in Tejas. In September 2011, Just For Fun owed Tejas $15,000 that it refused to pay based on its belief that the lease was invalid. Tejas demanded that the boats be returned for failure to pay, but Just For Fun refused. Tejas filed this suit after Just For Fun refused

3

to deliver the boats' titles to Tejas. Tejas sought "specific performance of the terms of the written agreements in effect and the forced delivery by [Just For Fun] of clear and clean titles to the two vessels[] to [Tejas]" and damages.[2]

After a trial to the bench, the trial court found that the boats were Tejas's property and ordered that Just For Fun transfer the titles to Tejas. It also awarded Tejas $190,500 for the cost of moving the boats, for the "wrongful detention of and loss of use, revenue[,] and profits from the boats," and for the unpaid rentals. The Lemleys and Just for Fun then filed this appeal.

## Discussion

### I. The lease renewals

The appellants argue in their first issue that the trial court erred by finding that John and Laura personally guaranteed the 2011 lease renewal.

The 2008 lease between Tejas and Just For Fun for the two party boats states that the lease term is one year beginning January 1, 2008, and "shall be automatically renewed for successive additional terms of [one year] each thereafter." It was signed by Jeff Rose on behalf of Tejas, by John on behalf of Just For Fun, and by John and Laura as personal guarantors. In December 2008, 2009, and 2010, Tejas and Just For Fun entered into a series of three

---

[2]The Lemleys and Just For Fun countersued for breach of contract, tortious interference with business relationships, conversion, unjust enrichment, and fraud. Just For Fun sought a declaration of the rights of the parties under the lease and the ownership of the boats and injunctive relief. The trial court denied their counterclaims, and the appellants do not appeal that part of the judgment.

"Lease Renewal Agreements" that acknowledged receipt of new consideration and "confirmed and ratified" the 2008 lease "except as modified below." Below that statement was an agreement that the lease term would be extended for one year. There was no signature block for personal guarantors, and John and Laura did not sign the agreements in their personal capacities.

The trial court's conclusions of law stated that the Lemleys were jointly and severally liable for the damages awarded to Tejas for Just For Fun's breach of the lease agreement "by virtue of [their] personal guarantee." The Lemleys argue that the successive lease renewal agreements were new contracts between the parties. And because they were new agreements, the only contract in effect at the time of the breach was the 2010 renewal. Because the Lemleys did not guarantee that renewal, they cannot be held personally liable for Just For Fun's breach of that contract.

Tejas notes that by the express terms of the 2008 agreement, the contract between the parties automatically renews every year for one year. They argue that the renewal agreements were therefore only memorializations of the automatic renewals and made no material alterations of the original contract terms. The renewal agreements, however, stated that the parties confirmed and ratified the 2008 agreement "except as modified below." Below that term were a number of provisions, including a change in the lease term; each agreement extended the lease for one year. These were modifications of the terms of the 2008 agreement and were supported by consideration. *See Fubar, Inc. v.*

5

*Turner*, 944 S.W.2d 64, 67 (Tex. App.—Texarkana 1997, no writ) ("The modification of an existing contract must be based upon sufficient fresh consideration.") (citing *Rhoads Drilling Co. v. Allred*, 123 Tex. 229, 244, 70 S.W.2d 576, 583 (1934)). The modifications made by the parties in the renewals and the acts of signing new agreements themselves signal the parties' intent to enter into a new agreement instead of allowing the 2008 agreement to automatically renew as its terms provided. *See Centerpoint Apartments v. Webb*, No. 02-07-00278-CV, 2008 WL 4052929, at *4 (Tex. App.—Fort Worth, Aug. 28, 2008, no pet.) (holding that when first lease automatically renewed, signing of second lease was a new contract and guarantor of first lease was not liable under second lease).

Also below the statement in the renewal agreements that the 2008 agreement was being modified were the signature lines, and those lines did not include the Lemleys' personal guarantees. Therefore these new contracts modifying the 2008 contract were not personally guaranteed by the Lemleys. Any other interpretation would extend the guaranty "by construction or implication beyond the precise terms of the contract," which we may not do. *Futerfas Family Partners v. Griffin*, 374 S.W.3d 473, 478 (Tex. App.—Dallas 2012, no pet.); *see also Coker v. Coker*, 650 S.W.2d 391, 394 & n.1 (Tex. 1983) (stating that any uncertainty as to the terms of the guaranty must be resolved in the guarantor's favor). Because the renewal agreements modified the terms of the 2008 lease

6

agreement to remove the Lemleys as personal guarantors, they cannot be held liable for Just For Fun's breach of contract. We sustain the appellants' first issue.

## II. Title to the vessels

In their second issue, the appellants argue that the there was no evidence to support awarding title to the boats to Tejas. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Just For Fun argues that there is no evidence that Tejas had an ownership interest in the boats because the boats have always been titled in Just For Fun's name, Clark never owned the boats and therefore could not contribute them to Tejas, and no bill of sale was ever produced. There is, however, some evidence

7

upon which the court could rely, in the form of Clark's testimony, that Clark took the boats as payment from Just For Fun for money that he had loaned the company. *See Uniroyal Goodrich Tire*, 977 S.W.2d at 334. Although John disputed Clark's claim, neither party produced financial records to support their contentions, and the determination of whether Clark had paid Just For Fun for the boats was the province of the factfinder. *See Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex. 1986).

That the boats' titles were never transferred to Tejas is also not determinative. No one disputes that the legal titles to the boats have always been in Just For Fun's name. However, under the parks and wildlife code, an owner of a vessel is "the person who rightfully claims lawful possession of a vessel by virtue of the legal title *or* an equitable interest."[3] Tex. Parks & Wild. Code Ann. § 31.003(4) (West 2002 & Supp. 2014) (emphasis added). Tejas, Clark, Just For Fun, and the Lemleys all treated the boats as Tejas's property for years despite title never transferring. By John's own testimony, he had known that the titles had not been transferred yet had still believed that Tejas owned the boats. That the title documents had not been transferred to Tejas's name does not defeat its equitable claim. *See Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 322 (Tex. App.—El Paso 2006, no pet.) (noting that under the Uniform Commercial

---

[3]Equitable title is "the present right to compel legal title." *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 801 (Tex. App.—Dallas 2013, pet. denied) (citing *Smith v. Dass, Inc.*, 283 S.W.3d 537, 542 (Tex. App.—Dallas 2009, no pet.)).

Code, "title passes to the buyer at the time and place at which the seller completes her performance with reference to the physical delivery of the goods . . . even though a document of title is to be delivered at a different time or place") (citing Tex. Bus. & Comm. Code Ann. § 2.401(b) (West 2009)).

Just For Fun argues that Tejas cannot show an equitable interest in the boats because it never produced a bill of sale. Equitable title requires proof that the interest holder "has paid the purchase price and fully performed the obligations under the contract." *Hydroscience Techs.*, 401 S.W.3d at 801. The partnership agreement between Funk and Clark contemplates that Clark would contribute the boats "to the Partnership pursuant to that certain Bill of Sale by and between Clark and the Partnership." Because there was no bill of sale, Just For Fun argues that Tejas has not fully performed under the contract. However, "[t]he general rule . . . is that only the parties to a contract have the right to complain about any non-compliance with the contract. If they are satisfied with the contract's disposition, a third party has no right to insist there has been any non-compliance." *Cadle Co. v. Harvey*, 46 S.W.3d 282, 288 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Bruner v. Exxon Co.*, 752 S.W.2d 679, 682 (Tex. App.—Dallas 1988, writ denied)). Just For Fun was not a party to the partnership contract between Funk and Clark, and both Funk and Clark considered the contract fully performed. Just For Fun cannot therefore rely on its claim of noncompliance to defeat Tejas's equitable right of ownership. *See id.* (holding that appellee acquired equitable title to property despite appellant's claim that he

9

had not performed a contract to which appellant was not a party).  We therefore hold that the evidence is legally sufficient to support the trial court's award of title to the boats to Tejas.  We overrule the appellants' second issue.

## Conclusion

Having sustained the appellants' first issue, we modify the judgment to delete that portion holding John and Laura Lemley jointly and severally liable for the damages awarded to Tejas for Just For Fun's breach of the lease agreement, including attorney's fees, pre-judgment and post-judgment interest, and costs.  Having overruled the appellants' second issue, we affirm the trial court's judgment as modified.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED:  October 30, 2014

10